[LOCAL LAW.]

## Bouldin and Wife v. Massie's Heirs and Others.

The patent issued on a military warrant under the law of Virginia, is
*prima facie* evidence that every prerequisite of the law was compli-
ed with.
The loss of a paper must be established before its contents can be pro-
ved : but where the patent issues upon an assignment of the warrant,
and the legal title is thus consummated, the assignment itself being no

longer a paper essential to that title, the same degree of proof of its existence cannot be required as if it were relied on as composing part of the title.

Where there is a strong degree of probability that the assignment has been lost or destroyed, through accident, its non-production, by the party claiming under it, ought not to operate against him, so as to defeat his legal title.

The original law of Virginia, which authorizes the assignment of warrants, did not require, that it should be made by endorsement, or by an instrument annexed to the warrant.

APPEAL from the Circuit Court of Ohio.

This suit was brought by the appellants, who were plaintiffs in the Circuit Court, to obtain a conveyance for twelve nineteenths of a tract of land lying in the state of Ohio, containing 1900 acres, for which a patent was issued in December, 1814, to the defendants, the heirs of Nathaniel Massie. The other defendants were purchasers from him. The survey on which the patent was founded was made as to 1200 acres, part thereof on a military land warrant No. 2675, granted by the Commonwealth of Virginia, to Robert Jouitte for 2666⅔ acres of land, of which 2051⅔ acres were alleged to have been assigned to Nathaniel Massie by Robert Jouitte. The plaintiff Alice claimed as heir of Robert Jouitte, and denied this assignment : on the existence and validity of which the whole cause depended. The assignment itself could not be produced, and was supposed by the defendants to have been consumed with the other papers of the war office, in November, 1800. Under these circumstances, the defendants insisted that the patent was *prima facie* evidence that every prerequisite of the law was complied with ; and that

satisfactory and legal proof of the assignment was made; and they relied on the testimony in the cause as supporting, instead of weakening, this presumption.

The plaintiffs contended that the papers filed in the Land Office did not justify the emanation of the patent; and that the absence of the assignment, and of any proof of its destruction, justified their requiring from the defendants the most complete proof of its existence and loss.

The papers on which the patent issued, were a copy of the original warrant, a copy of the platt and certificate of survey made in the name of N. Massie, as assignee, on the 24th of December, 1796, and recorded in the surveyor's office on the 9th of June, 1797, to which were annexed the following certificate and affidavit : " I do certify that the within survey was made on 1200 acres, part of warrant No. 2675, (Jouitte's warrant ;) 403 acres, part of warrant No. 3398 : and 277 acres, part of warrant No. 2642. The warrants No. 2675 and 3398 were taken out of this office the 13th day of June, 1797, with the original survey, of which this is a duplicate; warrant No. 4675 was taken out the 14th day of March, 1799; and that the said warrants had not been satisfied prior to the date on which they were taken out of this office, and that so much of each warrant as is contained in this survey, at least, was assigned to said Massie.

Given under my hand and seal of office, this 20th day of April, 1802.

Richard Anderson.     L. S.

State of Ohio, Ross county, ss.

Personally appeared before me, Joseph Taylor, a Justice of Peace in and for the county aforesaid, Nathaniel Massie, who made oath, that the original survey of which this is a duplicate, was lodged in the office of the Secretary of War for the purpose of obtaining a patent prior to the 8th day of November, 1800, and that the same has been lost or destroyed.

Given under my hand and seal this 16th day of January, 1806.

Joseph Taylor.     L. S.

The testimony of Anderson was taken in the cause for the purpose of proving the assignment from Jouitte to Massie, and the substance of his evidence will be found in the opinion of the Court. In confirmation of his testimony, the defendants also relied on a grant made to Massie, on the 2d of January, 1802, on a survey made the first of April, 1797, for Massie, as assignee of part of the same warrant. The entry was made on the 27th of January, 1795, and the patent contains a recital of the assignment of 205 and $\frac{2}{3}$ acres, part of Jouitte's warrant.

A decree, dismissing the plaintiff's bill, was entered by the Circuit Court, *pro forma*, by consent, and the cause was brought by appeal to this Court.

Mr. *Hammond*, for the appellants, argued, that the defendants stood in the same situation that Massie was at the time he made the sales, and it was incumbent upon them to prove the assignment of the warrant to Massie. *Feb. 21st.*

1822.

Bouldin
v.
Massie's
Heirs.

In every case, the person claiming as assignee, must establish his right by proof. If the endorsee of a promissory note, bill of exchange, or other writing made assignable at law, sue in his own name upon such note, bill, or writing, he cannot recover without making proof of the assignment. The person who claims to be the assignee of a warrant or platt and certificate of survey, until after a patent is issued to him, cannot assert in his own name, against third persons, a right arising under such warrant or survey without proving his purchase.[a] If this is the law where the original owner asserts no claim, and is no party before the Court, there is much, stronger reason that it should be so when such original owner is pursuing his right in the hands of a third person, whose claim he contests. It has, indeed, been decided, that when a grant once issues, such grant is *prima facie* evidence that every intermediate act necessary to authorize the emanation of the grant has been regularly transacted.[b] But that was *at law*, and the Court, in the opinion delivered, plainly intimate, that the fact, whether the incipient right had actually been assigned, might be contested in equity. Upon whom the burden of proof should rest, in such a case, is not noticed.

But the Kentucky Court of Appeals has decided, that where there had been no actual assignment of the warrant, the owner might recover the lands in

a Kerr v. Watts, 6 *Wheat.* 550.

b Polk's lessee v. Wendell, 9 *Cranch*, 87.    Ross v. Reed, 1 *Wheat. Rep.* 482. 487.    6 *Wheat. Rep.* 293.

the hands of the pretended assignee, after the grant, or in the hands of the purchaser with notice.[b] And they seem to have required the claimant to adduce proof that no assignment ever was made. In these cases, the assignment was actually endorsed upon the warrant, which it is conceived is a material circumstance.

Warrants for land, and plats and certificates of survey were not assignable upon the principles of the common law. They were subjects of contract, and might be sold and purchased: but without the aid of statutory provisions, the purchaser could not have acquired an absolute legal interest in them. The first statute of Virginia, that provided for granting land warrants, and executing surveys, enacted that " all persons, as well foreigners as others, shall have a right to assign and transfer warrants and certificates of survey for land." To assign or transfer, that is, to vest in the purchaser an absolute legal title to the warrant or platt and certificate of survey, can only be done by endorsing such assignment or transfer upon the warrant or platt itself, or by making it in writing, and attaching such writing to the document transferred: so that the subject assigned or transferred, and the act of assignment and transfer shall be inseparable. The owner of a land warrant may sell it, either by parol or written contract. Such sale would vest in the purchaser an equitable right to the warrant ; a right which a Court of law would respect, and a Court of equity enforce;

a 1 *Hardin*, 37.   4 *Bibb*, 447.

but it would not constitute him the legal owner. It would not operate as an absolute assignment or transfer of the legal ownership. So the obligee of a bond, made assignable by law, may dispose of it by contract; but if no assignment be endorsed upon it, or absolutely attached to and connected with it, the purchaser, it is conceived, could not sustain an action upon it in his own name as assignee. He would be compelled to sue in the name of the original obligee, and upon establishing his purchase, a Court of law would so far respect it as to preclude the nominal plaintiff from interfering to control the suit.

This position is sustained by the subsequent legislation of Virginia on this subject. Provision was made by law for returning warrants in part located, or otherwise, and receiving new warrants in exchange. The propriety of issuing new warrants to assignees where the name of the original owner was merely endorsed on an assignment executed without the attestation of witnesses, was doubted. To provide for this case, the act of the Virginia Assembly of February, 1809, was enacted. It recites the provision authorizing the assignment of warrants in general terms, and that there are " many warrants outstanding which have been transferred, sometimes by the mere endorsement of the names of the holder, and at others by assignment without attestation, and doubts have arisen whether, in such cases, it would be proper for the register of the land office to grant to the present holders new warrants, in exchange for the warrants so transferred and assigned. It

1822.

Bouldin
v.
Massie's
Heirs.

then directs, hat in such cases new warrants may be granted in exchange, provided always that no such exchange shall be made, unless the applicant therefor shall have previously annexed to such warrant his own affidavit, stating that so far as he knows or believes, the endorsements or assignments appearing on such warrant have been made fairly and *bona fide*, and that he, or those in whose name or names such exchange is sought, is or are the true and rightful proprietor or proprietors of such warrant." The act provides that this affidavit, with the original warrant, shall be preserved, and that the right of the original owner, or other, to the original warrant, shall not be affected by this proceeding. And it directs, that thereafter warrants shall only be assigned by written assignment on the back, attested by two or more witnesses. It is insisted that the framers of this statute recognised no mode of assignment, to vest a legal interest, in the warrant, that existed distinct and separate from the warrant itself. They contemplated that in every case the warrant should carry with it the evidence of ownership. And because in all transactions with third persons, claiming to be owners, the evidence might be insufficient or fabricated, the law required the preservation of the warrant itself, that with it this evidence might be preserved. Lest by exchanging the warrant this evidence should be lost, and the relative rights of the parties changed, or otherwise affected, the provisions just recited were enacted.

In this case, the warrant never was so assigned or transferred, as to vest a legal interest in Massie,

and it certainly cannot be incumbent upon the complainants to disprove that which does not exist. Had an assignment of any kind, subscribed with Jouitte's name, been endorsed upon the warrant, there would be something to which the complainants could direct their proof. They might attempt to negative the fact, that Jouitte had actually subscribed the paper; and the actual existence of such endorsement might be considered, at least after the grant issued, as *prima facie* evidence that it was genuine. But this presumption cannot be raised, without some foundation for it to rest upon.

Where the assignment is made upon a separate paper, as is claimed here, the defendants must establish the existence of this assignment, before it can avail them any thing. When the existence of such separate assignment is established, its genuineness and operative effect are to be examined.

The deposition of Anderson does not sufficiently prove that any such assignment ever existed. He evidently testifies, not from any distinct recollection of the fact, but from a knowledge of what ought to have existed to justify him in allowing entries in Massie's name as assignee. His testimony is as to the general course of business in the office, from which he infers that an assignment must have existed. And when the defendants put the question direct as to the character of the assignment, whether endorsed upon the warrant, or made on a separate paper, his answer is not positive as to the fact; but is clearly an inference from other facts. "On a separate piece of paper, *I presume,* as the entries

in the first instance were in Jouitte's name." This *presumption*, deduced by the witness from the fact that the warrant was deposited in the office by Jouitte, unassigned, and various locations made upon it in the owner's name, is but slender evidence upon which to establish any fact. The foundation on which the witness makes this *presumption* is before the Court. Can it be said that the inference is of that irresistible character that amounts to proof? If the witness were present, his testimony could not be received as competent to establish the fact that such paper existed, unless he were able to state, and did state, that he had such knowledge of Jouitte's handwriting as, upon well settled principles, would enable him to testify to it. Nothing is shown in his deposition of his knowledge of Jouitte's handwriting. For this reason alone his testimony is inoperative.

Were the existence of the paper clearly established, its contents and effect could not be proved, without first proving its loss. The testimony shows that this assignment was delivered to Massie. It is thus traced to his possession. His own affidavit, made with a view to obtaining the grant for the lands in question, is wholly silent as to its loss or destruction, and there is no evidence what has become of it. In such case it is not competent for the defendants to prove its contents.

The testimony of Anderson is liable to some exceptions. He is positive that he never made but one entry without an assignment of the warrant; that Jouitte's first entries were made by Massie; that the assignment was taken out of the office with the platt

1822.

Bouldin
v.
Massie's
Heirs.

and certificate, and that the assignment was first produced by Massie. He is, with respect to other facts equally material, unable to recollect. He is not certain that the assignment was on a separate paper; does not recollect when it was produced; its date, or whether attested by subscribing witnesses; nor is he positive whether it was executed by Jouitte personally, or by an agent. It is manifest from all this, that he does not state facts from a distinct recollection of circumstances and transactions; but from inference only. His official papers show, that certain facts ought to have existed, and hence he supposes that they existed, and so testifies.

The certificate of Anderson, on the 10th of May, 1801, that the warrant had been *taken out of the office by mistake on the 14th of June,* 1797, is incorrect in point of fact; because, both his subsequent certificate of the 20th of April, 1802, and his deposition, show, that it was delivered to Massie with the original platt and certificate of survey to be returned to the war office, that a patent might issue. As the warrant was wholly appropriated, the last survey upon it being made upon the first of April preceding, it was regular and proper, if not absolutely necessary, to return the warrant to the war office. The law required the warrant to be returned to the office where the patent issued, or a certificate to be adduced from the surveyor that a part remained unappropriated in the office, before a grant could issue. As the warrant was wholly appropriated, this certificate could not be made; there was, of consequence, a propriety in returning the original warrant. There

could be no mistake about it; and this certificate was found of great practical convenience to Massie, who was relieved by it from the necessity of returning the warrant without an assignment, or the warrant with the assignment, to be preserved as evidence against him.

The act of Congress, of March 3d, 1803, c. 343, which provided what evidence should supply the place of a warrant or certificate lost or destroyed, directed that a certified copy of the warrant or platt and certificate of survey, with satisfactory proof, by affidavit or otherwise, of the loss or destruction of the warrant or platt and certificate of survey, should be sufficient. The warrant never was in fact returned. No evidence was ever produced of its loss. Massie, in his affidavit made in 1806, in conformity with the provisions of this law, is silent as to the loss of the warrant, and confines himself to the platt and certificate of survey. It is by means of this certificate that the warrant *was taken out of the office by mistake* that the omission to return the warrant is supplied; although a careful examination of the whole documents would have shown that this certificate did by no means account for keeping the warrant back. It is thus demonstrated from the documents themselves, that the grant issued to Massie's heirs was upon incompetent and insufficient evidence.

By depositing his warrant with the surveyor, and procuring it to be located, Jouitte did all he could to secure his own rights, and to prevent imposition upon others. The warrant no longer existed a mere float-

1822.

Bouldin
v.
Massie's
Heirs.

ing evidence of a right to land, which circulated through the country, and upon which any person might forge an assignment, and thereby deceive and prejudice others.    After the location, the warrant was no longer assignable until withdrawn ; and it was by the unauthorized act of Massie, in withdrawing the warrant, that it was again in a condition to be assigned. The owner of a warrant, who has thus acted, stands in a situation different from one who has not thus been careful.    From him and his representatives the same degree of proof ought not to be required of a forged or unauthorized assignment, as might properly be exacted from one whose warrant by his own act, or his own neglect, was thrown afloat into the market. Indeed, it is deemed doubtful, whether, after the owner had entered the warrant, and thus put an end to its assignable character, that character could again be restored by the unauthorized act of another.

Upon the whole, we insist that the evidence does not make for the defendants even a *prima facie* case of assignment; that when its competency and effect are examined by settled principles of law, it amounts to nothing : of consequence, there is nothing for the plaintiffs to disprove.    The right of their ancestor is vested in them, and they must recover.

Mr. *Doddrige* and Mr. *Scott*, contra, stated, that whether the burthen of proof of the assignment be cast on the respondents, who claim under it, or the appellants, who deny it, was a question of vast importance to those who hold lands any where under the laws of Virginia.    The cases cited from the Kentucky

Reports furnish precedents in favour of the respondents, especially as the proofs of the assignments claimed were yet in being, which is not the case here.

It is insisted, on the other side, that the evidence of the contract of assignment ought to be written on the warrant, or on some paper attached to it ; inseparably attached to it, to use the language of the counsel.

A warrant for land under the Virginia system may strictly be termed a *chose in action.* It is the mere evidence of executory contract between the State and a citizen. Bounties in land had been promised to the army, by various laws, as a reward for military services. Where the services were performed, the relation between the parties was that of debtor and creditor. It is immaterial whether the debt thus created was payable in money, or in land at a particular place, and at a future time. When, by the act of 1779, warrants for the bounties were created, like all other evidences of debts due from the State, they would have been subject to the policy of the common law, and not assignable, but for the policy of that act. The statute made warrants and the certificates of survey assignable ; but the words " shall have right to assign and transfer warrants and certificates of survey for lands," do not import any particular mode of assignment. They give to the document its assignable quality, leaving the parties to choose their own mode of evidencing the contract. Whether they adopt the ancient policy of the common law, requiring all assignments to be made by deed of indenture, or the more easy mode of endorsement or

delivery, seems to be quite immaterial.    If proof of
an assignment on paper, either attached to the wri-
ting or not, were now required, the rights of assignees
would, at this time fail for millions of acres : for if po-
sitive proof of an assignment must be made, in all
cases, by those claiming under it, the mere ink and
paper importing the assignment would not be suf-
ficient.    Proof of the execution would be required :
in a great majority of cases, it could not be produced.
These papers passed from hand to hand like coin ; they
were owned by all classes of people ; as well by the
poor and illiterate, as by men of business.

Warrants, in many cases, were left with the princi-
pal surveyors, for safe keeping, and a letter addressed
to him from the owner, to let another have so many
acres of warrant, was received as sufficient authori-
ty to make an entry for the assignee.    These letters
could be produced in but few cases ; but if required
at all, the mere production would not be evidence.
Proof of the handwriting would be called for on the
appellant's principles.    As to the cases cited from
the Kentucky Reports : in one of these, an assign-
ment was endorsed ; in the other a breach of trust ex-
isted.    As against the patentee or those claiming under
him with notice, proof was admitted, in the one case,
that the assignment was a forgery ; in the other, that
the confidence of the owner was abused.    But this
proof was given by the owner of the warrant, not by
the claimants under the patent.    In these cases the
nature of the claim could yet be traced ; in ours it
cannot.

From these cases, and the reason of the thing, it is

evident that the patent is *prima facie* evidence of all that was necessary to its emanation. Indeed, it seems to be admitted on the other side, that it has been so decided. But this admission is qualified. It is insisted that where the patent office contains the warrant, assignment, and survey, all in regular order, there claimants of the warrant will be held to disprove the derivative claim. If this be the rule, the patent is but *prima facie* evidence of its own existence only, and of nothing necessary to its existence. This notion is fanciful, but not sound. The patent is *prima facie* evidence of an assignment, or it is not. If it is *prima facie* evidence, the appellants must wholly fail. We have a patent to Massie's heirs, and which they claim *legally*, and the other defendants, at least, equitably, (for we are in a court of equity,) and the appellants have no proof.

The act of 1809, referred to by the appellants' counsel, gives him no aid. It recites that assignments were sometimes made in a loose manner, and that there was a consequent hazard in granting exchange warrants; and its provisions are prospective, and all of them are merely directory to the register.

But if the claimants are held to the proof of an assignment, in fact, they have made that proof. Anderson states that he came into office in July, 1784, the commencement of the official duties in Kentucky; has ever since held the office. At the commencement, a few entries were made by another person; in 1812, eight or ten by his daughter, while he was sick; and for some reason, not explained, about as many more, by his son, in 1814. With these exceptions, every

entry on his records was made by himself. All those on Jouitte's were so made. They were all directed by Massie. He considered him agent at first, but never saw a written power. Before the 27th January, 1795, Massie produced a written assignment, on which he made the entry in question of that date. He further states, that on the 14th June, 1797, he delivered the assignment and warrant to Massie, with the survey in question.

An attempt is made to discredit this testimony by its intrinsic demerits. It is said to be wonderful, that he should not recollect whether there were any witnesses to the assignment, what its date, and when delivered to him. But the assignments in his office are so numerous, that if at the distance of twenty-two years he should feign to recollect such particulars, that would, indeed, discredit him. It is further objected to him, that he states that he never, but in one instance, made an entry for an assignee, without having the assignment, and that was not in the present case; and that he pretends to recollect delivering out the warrant in question, to whom and when. But it is to be remembered, that upon delivering out official papers, entries are made, which assist the memory. As to the particular case of an entry, without an assignment, it would be strange if he did not recollect it. That was the only case in an official life of nearly forty years in which he suffered such an indiscretion to pass him. He was uneasy about it, and made immediate inquiry of the owner. The attempt to discredit Anderson, from his own examination, therefore fails.

So much for Anderson's testimony under the commission. Is it supported or defeated by the official evidence?

Some apparent confusion occurs, which is cleared up by an attention to dates. His second certificate relates to the first transaction in point of time. It was his practice to forward the assignment with the first survey, in order that they might lay in the patent office, to be referred to when other surveys should be returned: and called thence a reference paper. The warrant with the last. But he delivered both the assignment and warrant to Massie, with the survey in question, being the first, which, as to the latter, was a mistake. It was not recollected that one or more surveys were yet to come. Of such delivery an entry is made. The time and the occasion can, therefore, be recollected. If our hypothesis be right, Massie may be well supposed to have delivered all the papers into the War Office, when they were destroyed by fire on the 8th of November, 1800. After the destruction of the War Office, the surveyor is applied to for the last survey of 851 acres; then it was that the warrant should have been delivered with the survey. But the warrant was not found, and the memorandum book would show what had become of it. He could not refer to the assignment or warrant as reference papers, for they were destroyed. He, therefore, states what was the amount of the assignment, and that the warrant was taken from his office, by mistake, on the 14th of June, 1797. On these papers a grant issued for the 851

acres.  Although Anderson might have stated in his certificate by whom the warrant was taken, and on what occasion, the omission to do so is unimportant.

By a law of Congress, patents can be had upon lost papers, by taking a copy of the warrant from the Register, *or a copy of the platt and certificate from the surveyor*, and satisfying the officer of the loss of the papers by his own oath, or otherwise.  Massie made affidavit on the copy of the platt and certificate, that the original, of which that was a copy, had been filed in the War Office, and that it had been lost or destroyed.  The omission to state that the warrant and assignment accompanied the plat, and were destroyed with it.  He got them all in order to procure a patent.  It was his interest to file them ; and it is incredible that he did not.

But supposing the assignment not to be clearly proved, the Court will *presume* one from the circumstances, in order to support the possession.

On the subject of such presumptions, generally, reference may be had to the authorities cited in the argument of another cause at the present term.[a]  To these may be added some of the decisions in the local tribunals.  Thus the Court of Appeals of Virginia have determined that, though the presumption arising from the lapse of time may be repelled by circumstances, yet those circumstances must be clearly proved, which, in the present case, they are not.[b]  By the law of Virginia, a person owning lands on one side of a stream, and desiring enough of the

a  *Ante, p.* 59. Ricard v. Williams.
b  1 *Wash. Rep.* 188.

lands of another on the opposite side, against which to abut his dam, may acquire it contrary to the will of the owner.   He procures a writ from the County Court in nature of a writ *ad quod damnum*, to value the land.   The law provides, that upon paying that value, the party shall be seized of the land condemned.   In the case in question, the condemnation had taken place in 1777.   The money had not been paid ; the land had been sold ; possession had gone with the condemnation, and a mill had been built. The statute period of limitation had not elapsed, yet the Court presume *the fact of payment :* the very fact which devests one man and invests another with the inheritance.[a]   In another case a testator had appointed several executors, and impowered them to sell.   Some had qualified, and some had not.   They who qualified, sold and conveyed.   Time had not elapsed to bar a writ of right.   The case was decided under the stat. 21 Hen. VIII. c. 4.   The deed was absolutely void ; it passed no estate in law or equity, unless it appeared that the other executors had renounced.   The Court determined that the renunciation was a fact, which admitted of proof *in pais* as well as by record ; but that in favour of the possession it might be inferred from circumstances.[b]

The presumption sustained in the cases quoted, vastly exceeds what is required in ours.   In our case the circumstances are unanswerable.

The appellants cannot rely on any supposed difference between an imperfect legal title and an equitable one, as to the question of either presumption or

a  Young v. Price, 2 *Munf.* 534.
b  Giddy v. Butler, 3 *Munf.* 345.

abandonment. If a warrant creates nothing but an equitable interest, and an entry upon it an imperfect legal one, then Jouitte never had more than an equity. He never had an entry unless the testimony of Anderson be sufficient to establish an agency. Give but credit to that testimony, and both agency and assignment are established.

As to the defendants, who have not admitted the appellants' derivative claim, the decree must be affirmed at all events, unless the documents from Albemarle County Court are sufficient to establish the character of Alice as heiress. Let this be conceded for argument sake; then what are they? Documents made *ex parte*, and received by usage only in Virginia, for the direction of the Register of the land office. If this evidence can establish a derivative title, ours filed in the land office for the direction of the commissioner, are of equal authority to support our derivative title. *A fortiori*, as ours grew into use, not by custom merely, but by act of Congress.

Mr. *Hammond*, for the appellants, in reply, stated, that it had been insisted by the respondent's counsel, that as it is shown in the bill that the complainants never abandoned the first original entries, they cannot claim the land in question, because, if entitled at all, it is to the lands upon which the first location is made. If this were correct, it would follow that the warrant might actually appropriate double the amount of land that it called for. The complainants would hold the first location, and the defendants that where the warrant is patented. This absurd consequence

is sufficient to show that the position is incorrect. It is, however, untenable for another reason. The owner of a land warrant, who has never parted with his right to it, may regard the person, who intermeddles with it, as acting for him; and thus claim and hold the land appropriated, although he never directed the location.

It is also said, that as the legal title was invested in Massie's heirs by the patent to them, that title enures to the benefit of those to whom Massie had previously conveyed without title, and that therefore the defendants are invested with a legal title. This proposition cannot be sustained. It is true, that in certain cases, where a person conveys without title, and the same person afterwards obtains title, as between such person, and the person to whom a conveyance was made, the after acquired title cannot be set up to prejudice the purchaser. But this proceeds upon the doctrine of estoppel, and can have no application to a case like this, where the person with whom the title first commenced, is seeking to assert it against those who have unfairly got possession of it.

It is conceded that a warrant for lands is made assignable by the statute that authorized it to issue; and it is said, that it is the mere evidence of an executory contract between the State and a citizen. The contract is for a grant of land, hereafter to be made, and the warrant is evidence of that contract. The act did not mean to give authority to transfer the land when granted : but the evidence of right before a grant was made. The power to assign and trans-

fer is, therefore, not a power to make a sale of the subject ; and it is apprehended that a deed of indenture was never used at the common law to transfer to a purchaser a legal right in any written evidence of an executory contract.

. The warrant, or platt and certificate of survey, is the subject that is to be transferred by the act of assignment, and it seems indispensable that there should be some direct connection between an act and the subject upon which it operates. Hence we insist, that an assignment can only be made as before suggested.

It is not pretended, that a purchaser of a warrant cannot hold, unless it be thus assigned. The principle is applied to the evidence that ought to be required. If the assignment be endorsed upon the warrant, or be executed upon a separate paper, and connected with the warrant, these facts might be considered *prima facie* evidence of a sale, sufficient at least to put the claimant upon some proof to impeach them. But where nothing of this kind exists, and a purchase be claimed, such purchase is wholly matter *in pais*, and he who claims under it must furnish the proof of its existence. Until such proof be furnished, there is nothing for the other party to impeach.

This might be insisted upon even after the patent emanated. The law requires the warrant and platt, and certificate upon which the grant emanates, to be carefully preserved. And this is not without object. That object would seem to be a preservation of the evidence upon which the grant was obtained, that

the fact of ownership, decided *ex parte* by the officers of the land office, might be fairly open for investigation. But certainly this matter of fact cannot be presumed against an original owner, before the patent issues, and we insist that this case stands as if the patent had not issued. And, besides, it is conceived, that this fact ought not to be presumed against an owner, in a case standing as this does, where the proof is clear that the patent was issued upon evidence that did not authorize it.

That a very loose method of transferring land warrants was adopted and practised, cannot vary the law, nor has it been considered to have had that consequence. The cases cited show, that property in these warrants could not be acquired by delivery as in the case of other chattels. The mischiefs apprehended do not exist. We do not claim that the warrant can be followed into the hands of an innocent purchaser of the legal title. But we conceive that the patentee is not such a purchaser. It is incumbent upon him to know that he is fairly owner of the intermediate evidence of title; and if he is not, he ought not to hold the land. This is the policy of the act of 1809, and though prospective as to its enactments respecting future assignments, it plainly intimates, by its provisions for existing cases that its authors contemplated no such thing as an assignment, distinct and separate from the subject claimed to be assigned. If any mischief results from the doctrine asserted, it can only fall upon those, who have possessed themselves of the rights of others, without

taking proper precaution to be certain, that they were not aiding to do injustice.

It is also insisted for the defendants, that, although an assignment in fact may not be proved, yet from the circumstances, the Court will presume an assignment to support the possession.

All presumptions stand upon their own particular circumstances. But presumptions are never resorted to where the facts are otherwise understood. Here the nature and character of the pretended assignment is fully in evidence. It stands surrounded with many suspicious circumstances. Proofs as well as presumptions are strong against the fairness of Massie's conduct. In such a case it would surely be very unsafe to found a title upon presumption. In all the cases cited, the parties were all residents in the same neighbourhood. The claimants witnessed daily the acts of ownership exercised, and improvements made by the other party. From their omission to assert any right, the presumption naturally arose, that they had no right to assert. Here the case was different. After commencing his title the original proprietor died. His heir knew nothing of what was done. She resided in the interior of Virginia; the land office was in Kentucky; the lands in the wilderness of Ohio. It is going too far to say, that she was bound to take notice of the entry in the office, in Kentucky, and of the improvements commenced and carried on in Ohio. It is palpable that she was in fact unacquainted with the whole subject. The Court are asked to presume first, that she was apprised of that of which she was really ignorant, and from that presumption to presume

again, that she knew there was a sale, or assignment, and for that reason forbore to assert her pretensions.

The time, in this case, under its circumstances, would not bar a recovery on ejectment, in Ohio ; an inchoate legal title ought not to be destroyed by presumption in a shorter period. It is believed, that none of the cases go so far.

The certificate of the Court of Albemarle County is sufficient, in this case, to prove the heirship of the plaintiff, Alice, and her intermarriage with the other plaintiff. The facts are evidently denied in the answer, *pro forma.* The defendants assert only their ignorance, and ask proof. The certificate in question is exactly that kind of evidence, which is taken to establish the *prima facie* right of the party to a warrant, platt, and certificate, and patent as heir, or representative, and ought to be sufficient to satisfy those, who profess only that they know nothing, and therefore call for proof.

The surveyor's certificate that the warrant was assigned, has been received in the land office, as evidence of such assignment, and when the commissioner has acted upon it, and issued the grant, the defendant's counsel has strongly urged, that he who claims against it, must disprove it. We ask no more in the case of the certificate of the County Court. There is no act of Congress directing such certificate to be received for any purpose. In respect to this the counsel are mistaken.

Mr. Chief Justice MARSHALL delivered the opinion of the court, and after stating the case, proceeded as follows :

It may be doubted whether the act of the 10th of August, 1790, authorized the issuing of a patent in the name of an assignee.  This doubt however is entirely removed by the act of June 9th, 1794, c. 238, which enacts that every officer and soldier, his heirs or assigns, entitled to bounty lands, &c. according to the laws of Virginia, " shall, on producing the warrant, or a. certified copy thereof, and a certificate under the seal of the office where the said warrants are legally kept, that the same or a part thereof remains uncertified, and on producing the survey agreeably to the laws of Virginia, for the tract or tracts to which he or they may be entitled as aforesaid, to the Secretary of the Department of War, such officer or soldier, his or their heirs or assigns, shall be entitled to and receive a patent for the same, from the President of the United States, any thing in any former law to the contrary notwithstanding."

This act recognizes the right of the assignee to a patent, without prescribing the manner in which the assignment is to be proved.  It requires the production of the warrant, or a certified copy thereof, and of the plat and certificate of survey, but gives no rule respecting the proof of the assignment.

It is admitted that the assignment may be endorsed on the warrant, or may be connected with it, and that the warrant may remain in the surveyor's office, since a patent may be issued for a part of it, as was done in this case, while a part remains unsatisfied ; and may be issued on a certified copy of it. It would seem, from these circumstances, that proof of the assignment might be received by the surveyor.

If the warrant were assigned by endorsement before the entry, or if the entry were assigned and transferred before the survey, the survey would be made and certified to the land office, in the name of the assignee. The law does not, in terms, require that the original assignment, or a copy of it, should be transmitted to the office with the survey. It would seem then, that in ordinary cases, proof of the assignment might be made in the surveyor's office, and certified to the land office.

Unquestionably, if notice were given by any person claiming title against the certificate of the surveyor, the fact would be examinable before the emanation of the patent ; but, as no law requires that the assignment should be submitted to the person who issues the patent, or be always examined and decided on by him, nothing seems to oppose. the practice of relying, in ordinary cases, on the surveyor's certificate. If such be the rule of the office, the Court ought not to disregard it ; and that it is the rule, is, we think, to be inferred from the fact that this patent has been issued to the assignee in this case on such testimony, and that the bill does not charge it to have been issued irregularly. It denies the assignment ; but not that the usual proof of it was made in the land office. In this case the survey was made in the name of the assignee, and the surveyor certifies that the warrant was assigned to the extent of the survey. We must suppose that the usual proof of the assignment was received.

By the act of the 3d of March, 1803, c. 343, it is enacted, that " where any warrants granted by the state of Virginia for military services, have been sur-

veyed on the north-west side of the river Ohio, be-
tween the Scioto and the Little Miami Rivers, and
the said warrants, or the platts and certificates of sur-
vey made thereon, have been lost or destroyed, the
persons entitled to the said land may obtain a patent
therefor, by producing a certified duplicate of the
warrant from the land office of Virginia, or of the
platt and certificate of survey from the office of the
surveyor in which the same was recorded, and giving
satisfactory proof to the Secretary of War, by his af-
fidavit, or otherwise, of the loss or destruction of said
warrant, or platt and certificate of survey."

This act has been literally complied with, except
that instead of " a certified duplicate of the warrant
from the land-office of Virginia," we find a copy of
the warrant, certified by Richard C. Anderson, the
principal surveyor, dated the 30th of April, 1795,
when the warrant was in his office, and the certifi-
cate regularly and officially given, and written on
the back of a survey, No. 1629, for 400 acres, part of
the said warrant, on which a patent was issued to
Robert Jouitte, dated the 28th day of October, 1799.

The purpose for which a certified duplicate from
the land office of Virginia was required in the case of
a lost warrant, undoubtedly was to protect the United
States from fraudulent claims on warrants alleged
to be lost, but which never existed ; not to settle con-
troversies between the original holder and those
claiming under him by assignment. The land office
of the United States being in possession of an offi-
cial copy of that warrant, on which a patent had
been issued, no motive existed for requiring a dupli-

cate from the land office of Virginia. The original existence of such warrant could not be more fully proved, and the evidence of it which was in the office was such as the law deemed satisfactory at the time it was received. But if this were an irregularity, it is one which could only affect the United States, and is of no consequence in this cause, since all parties admit the existence of the warrant and claim under it.

This patent then must be considered as having issued regularly, on the documents required by the rules of the office ; at least so far as concerns the parties before the court. The title of the person who has obtained it is undoubtedly examinable, but no presumption exists against him.

The testimony of Anderson, the principal surveyor, has been taken, for the purpose of proving the assignments from Jouitte to Massie. He deposes that the office was opened for making entries on the north-west side of the Ohio, on the 1st day of August, 1787, and that he had continued ever since to transact the business in person, with the exception of a short time which he mentions, and which does not comprehend the making of the entries in this case. He has never, except in one instance, which was not Jouitte's, made entries in the name of an assignee, without having previously received the assignment, and in that instance he was informed by the original proprietor of the warrant himself, that he had sold it. That Jouitte's warrant was deposited in his office on the 19th day of November, 1784, (he thinks by Robert Jouitte himself,) and that the witness made

all the entries on it. He has no hesitation in saying the assignment was prior to the entry on which this survey was made, or he could not have made the entry. On being asked whether the assignment was on the warrant, or on a separate piece of paper, he answers, on a separate paper, he presumes, as the first entries were made in Jouitte's name. On being cross-interrogated by the plaintiff, he says, that he does not recollect the precise time when the assignment was produced in his office, but it was not prior to the 27th of January, 1795, (the date of the first entry in the name of Massie,) and to the best of his recollection, purported and appeared to be made by Jouitte himself. He does not recollect its date, nor whether it was attested by a subscribing witness. It was lodged in his office by Nathaniel Massie, and taken out with the platt and certificate of survey of the assigned part of the warrant, by him, on the 14th of June, 1797.

In corroboration of the testimony of Anderson, the defendants rely on a grant made to Massie, on the 2d of January, 1802, on a survey made the 1st of April, 1797, for Massie, as assignee of part of the same warrant. The entry was made on the 27th of January, 1795, and the patent contains a recital of the assignment of 2051⅔ acres, part of Jouitte's warrant.

It is impossible to read the testimony of the principal surveyor, or to credit it, without believing that an assignment purporting to be made by Jouitte, was produced by Massie, and deposited in his office. His fixed rule to require the production of an assign-

ment before an entry in the name of the assignee could be permitted, his averment that he never departed from that rule, except in a single instance, his clear recollection of the circumstances attending that instance, his admission of entries in the name of Massie, as assignee, in the life-time of Jouitte, his averment that the assignment was placed in his office, and taken out with the platts and certificates of survey by Massie, prove that there must have been such a paper.    But the proof of its being executed by Jouitte, is certainly not so explicit as it might or ought to have been.    Colonel Anderson does not say that he was acquainted with the handwriting of Jouitte, and believed the assignment to have been written by him.    But he acted as a public officer on the full conviction of this fact, and his whole testimony proceeds upon the idea that he was entirely satisfied of the verity of the instrument.    Jouitte and himself having been officers in the same service, it is not improbable that the handwriting of the one was known to the other; and to the question whether the assignment purported to be made by Jouitte himself, or by an agent, he answers that it " purported and *appeared* to him to be made by Jouitte himself, to the best of his recollection."    The word " *appeared*," which is introduced by the witness in his answer to this interrogatory, and which is not in the question, seems intended to indicate that he had formed an opinion on the handwriting.    Had the plaintiff suspected that Anderson was not acquainted with the handwriting of Jouitte, or not perfectly satisfied that this assignment was in his handwriting,

some question would have been propounded indicating this suspicion. But no such question is propounded; and we can make no other justifiable inference from his whole testimony and conduct, than that he was acquainted with the handwriting of Jouitte, and was satisfied that the assignment was written by him.

On the character of the principal surveyor no imputation is cast. His office is a proof of the confidence reposed in his integrity by those who knew him. His testimony is incorrect, is studiously calculated to establish an untruth, and his official conduct fraudulent, if he had no sufficient knowledge of the verity of the assignment. That his testimony is less explicit than it ought to have been ; that it omits the express averment of a fact, implied by all he says, and which is necessary to its fairness and its truth, will not, we think, justify a presumption against that fact. We understand Colonel Anderson's testimony as implying a knowledge of the handwriting of Mr. Jouitte, and of the verity of the assignment.

There is still another defect in the testimony which is by no means inconsiderable, and which has been strongly pressed by the counsel for the plaintiff. The assignment itself is not produced, and there is no direct proof of its loss. Its absence depriving the plaintiffs of the power of disproving it, is a circumstance calculated to excite suspicion, and ought to be accounted for. The rule that the loss of a paper ought to be established before its contents can be be proved, is well settled, and ought to be maintained. Yet there are difficulties in applying it to this case which are not to be surmounted.

The legal title of Massie is consummated, and the assignment, having performed its office, is no longer a paper essential to that title. The same proof respecting it therefore cannot be demanded, which might be required were it relied on as composing part of the title. It was not absolutely incumbent on the assignee to preserve it after the emanation of the patent ; and he could not, unless the transaction be presumed fraudulent, foresee this controversy. He died before any claim on the part of the plaintiffs was asserted, before any denial of the assignment was made, and therefore could not be expected to prepare testimony in its support, or to account for its loss. Had the assignee been living, he might be expected to show, at least by his own affidavit, supported by probable circumstances, the loss of the assignment ; but he died before the occurrence of any circumstance which might suggest the propriety of such an affidavit. The defendants have done all in their power. They aver their belief that the assignment was real, their total ignorance of its present existence, and their belief of its destruction, and they state the probability that it was burnt with the papers of the war office.

Under all the circumstances of the case, the probability of its being consumed in the war office is great. The assignment was delivered with the warrant, and the platt and certificate of survey, to Massie, on the 14th of June, 1797. It might be supposed proper to deposit it with those papers in the war office for the purpose of obtaining the patent. There

is nothing unreasonable in the supposition that it was there deposited, and consumed with the other papers of the office.

We think, too, that the length of time which was permitted to elapse before any inquiries appear to have been made respecting this property, furnishes strong evidence of the opinion that Mr. Jouitte had parted with his interest in it. So early as January, 1795, between one and two years before the death of Jouitte, Massie claimed a part of the warrant as his own, and made entries on it in the public office, in his own name as assignee. It is not probable that a property which constituted no inconsiderable part of the estates of the officers, should have been neglected by this officer in his life time, or by his family after his death. Inquiries respecting it would naturally have been made, not by the daughter, who may be supposed to have been an infant, but by her mother, her guardian, or other friends. The omission to make these inquiries may be accounted for if it was known that the warrant was assigned: not otherwise, without imputing to those relatives of the infant, a considerable degree of negligence.

We think that under these circumstances the non-production of the assignment ought not so to operate against the defendants as to defeat their legal title.

But the plaintiffs deny the validity of the assignment, because it was not made on the warrant, nor annexed to it.

The law which authorized the assignment of warrants did not require that it should be made by endorsement, or by any instrument annexed to the war-

rant. It is not shown to have been the usage. Under circumstances most generally attending this property, and which actually attended this particular case, the assignment could neither have been endorsed nor annexed without great inconvenience. The warrant was filed in the office of the Surveyor General, with the entries. This would occur in every case where the entries in whole or in part were made. The original proprietors resided generally in Virginia. The warrants were deposited in the office of the Surveyor General, in Kentucky. These warrants, thus deposited, and the entries made on them, were transferrable. It is obvious that the transfer, if no law forbid it, would be made on a separate paper. If any particular mode of authentication was necessary, the law ought to have prescribed that mode. This not being done, the mode was left to the parties.

The subsequent act of the legislature of Virginia, rather shows the mischief which had grown out of this state of things, and of the practice under the law, than that the practice under the law was contrary to the legislative construction of it.

This is one of those cases in which the equity of the plaintiffs is not, we think, sufficiently proved to deprive the defendants of their legal title.

Decree affirmed, with costs.