# WHEELING.

EDGELL *v.* CONAWAY.

Submitted June 12, 1884—Decided November 1, 1884.

1. A court will not pass upon the constitutionality of a statute, unless a decision upon that very point is necessary to the determination of the case.    (p. 749.)

2. The general rule, is that where a bill of exceptions claims, that illegal evidence was admitted, or that the verdict of the jury was contrary to the evidence, and then proceeds to set out the facts to show it to be so, it must not rest there but go further and allege that the facts so stated were all that were proved in the case or on that point, or some equivalent allegation, so that the court may fairly conclude that there were no other facts bearing on the question.    But if without such allegation the record clearly shows that fact, then such allegation is not required. (p. 750.)

3. If the preliminary evidence offered to show the admissibility of other evidence tends to prove such admissibility, it is not the province of the court to pass upon the sufficiency of such evidence ; this is a question for the jury.    (p. 752 )

4 Where a portion of a written document is proven to have been destroyed and the other portion lost or in the hands of a non-resident of the State, and there is no suggestion that such destruction was fraudulent, the contents of such document may be proven by secondary evidence. (p. 754.)

5. In such case it is not necessary to exhaust all possible evidence of the loss or destruction of such document. The sufficiency of such evidence is a preliminary question addressed to the discretion of the court ; and the object of it is merely to establish a reasonable presumption of the loss or destruction. (p. 754.)

The facts of the case appear in the opinion of the Court.

*R. S. Blair* for plaintiffs in error.

*I. N. McNight* and *D. F. Pugh* for defendants in error.

SNYDER, JUDGE :

Action originally brought before a justice of Tyler county by Isaac M. Edgell and George Lamp against C. I. Conaway, Thomas Smith, F. F. Furbee, James B. Smith, Jonathan Ankrom, M. R. Ankrom, W. M. Stealey and D. M. Smith, partners as the Middle Island Tie Company, to recover two hundred and ninety-nine dollars and eighty cents for money due on contract for seven hundred and thirty-seven crossties and five dollars for drifting said ties. The defendants pleaded orally that they were not indebted and the case was tried by a jury of six before the justice and a verdict returned and judgment entered for the defendants and the plaintiffs took the case by appeal to the circuit court of said county where it was docketed. The defendants, on affidavit filed, moved the court to change the venue which motion the court overruled and the case was tried before a jury of six jurors who were sworn "to try the matters in difference between the parties." A verdict was found for the defendants and, on August 28, 1883, the court entered judgment against the plaintiffs for costs and dismissed their appeal. From this judgment the plaintiffs obtained a writ of error to this Court.

The defendants in error ask us to dismiss this writ of error, regardless of the merits, for the want of jurisdiction to hear it. They claim that as this case was once tried by a

jury before the justice, they cannot, under section 13 of article III of the Constitution as amended in 1880, have the same re-tried, except by writ of error "according to the rules of the common law." To sustain this position we would have to decide section 169 of chapter 8 Acts 1881, to be unconstitutional and void. This we are not at liberty to do, or even to pass upon the question of the constitutionality of the statute, unless a decision upon that very point is necessary to the determination of the case—Cooley's Const. Lim. 163; *Hoover* v. *Wood*, 9 Ind. 287; *Frees* v. *Ford*, 6 N. Y. 177. Unless our decision in this case operates as a reversal of the judgment of the court below, the defendants in error will not be prejudiced by this writ of error and whether or not the said statute is unconstitutional is immaterial to their rights in the case. The right of the defendants in error to raise and insist upon that question depends upon whether or not there is error in the record aside from that question. We shall, therefore, proceed to consider first the errors assigned by the plaintiffs in error and if they are not sustained it will be unnecessary and improper to consider the said constitutional question.

Three bills of exceptions were taken by the plaintiffs in error during the trial, the first of which was to the action of the court overruling the motion for a change of venue. This exception was not relied on by counsel in this Court and, I think, it was properly abandoned as it is entirely without merit.

The second bill of exceptions states that, after the plaintiffs had closed their case the defendants recalled the plaintiff Edgell and propounded to him the questions:

"Did you send your son down the river to look after some ties claimed by you?" to which the witness answered, "I sent my son Lloyd down the river to see about gathering these ties, and to see if they were gathering them on the contract that had been made."

"Did your son go down to Parkersburg as your agent?" Answer, "he did not."

Thereupon the defendants, by their counsel, propounded the following question to one Jonathan Ankrom, a witness of the defendants then on the stand, who was on the witness

stand at the time of the propounding of the several questions hereinbefore set forth to the plaintiff Edgell:

"What conversation had you with Lloyd Edgell, the son of the plaintiff, in Parkersburg, in regard to said ties?"

To asking and answering of the said question, the plaintiffs, by their counsel, objected, but the court overruled the said objection and permitted the question to be answered, the answer being as follows:

"He, Lloyd, said to me that he wanted me to load his father's ties; to which I replied that I would give him for the ties fifteen cents, the offer being by way of a joke. Thereupon the boy turned away a short distance, and spoke to one Charles I. Conaway in my presence and hearing as follows: 'Load our ties;' which Charles I. Conaway refused to do, and gave as a reason that he would not be responsible. Lloyd Edgell replied that if you will do it, we will take Thompson for it."

This conversation occurred between Conaway and Lloyd Edgell in presence of the witness, in the absence of plaintiffs; to which ruling of the court in permitting said question to be propounded and answered, as well as to the refusal of the court to exclude said evidence from the jury, the plaintiffs, by their counsel, excepted.

The plaintiffs in error insist that this evidence was improper, because it was not proven that Lloyd Edgell was the agent of the plaintiffs. On the other hand the defendants in error claim (1) that the bill of exceptions does not expressly or by implication show that there was not other evidence adduced on the trial to prove such agency and that, therefore, the bill of exceptions is insufficient; and (2) if said bill should be held sufficient, it does not establish error of which the plaintiffs in error can complain.

1. It is undoubtedly an established rule, arising from public necessity and convenience, that every fair legal presumption is in favor of the judgment of the court below; and, therefore, upon bills of exceptions the courts hold that they do not succeed in the point of law they assume until they, affirmatively, show enough facts to overthrow every such legal presumption in favor of the correctness of the ruling they assail; for the maxim is, *stabit præsumptio donce probetur*

*in contrarium—Shrewsbury* v. *Miller,* 10 W. Va. 115; *Rose* v. *Miller,* 21 *Id.* 291.

The general rule is, and it is always the safer practice to follow it strictly, that where a bill of exceptions claims that illegal evidence was admitted, or that the verdict was contrary to the evidence, and then proceeds to set out the facts to show it to be so, it must not rest there, but proceed and allege that the facts so stated were all that were proved in the case or on that point; or some equivalent allegation or showing from which the court can fairly draw that conclusion. But, without such allegation, if it clearly appears or can be fairly inferred from the record that no other evidence was given on the subject than that set out in the bill of exceptions it is sufficient—*Gamble* v. *Hamilton,* 7 Miss. 469; *Probst* v. *Braeunlich, supra* p. 357.

Referring to the bill of exceptions before us, it seems to me, that we may fairly conclude that it contains all the evidence adduced on the question of the agency of Lloyd Edgell at the time the exception was taken. It states that the plaintiffs had closed their case and during the introduction of the defendants' evidence, the defendants by leave of the court re-called the plaintiff to the witness stand. It is evident that no foundation had been then laid for introducing the declarations of said Lloyd Edgell and that the purpose for re-calling the plaintiff was to show the agency of said Lloyd in order that his declarations might be introduced as evidence to the jury. I think the facts stated in the exception exclude any reasonable or fair inference that any other evidence had been adduced to show the agency of said Lloyd Edgell, and that the same is sufficient to present the question raised by it.

2. The next enquiry is, does said exception show an erroneous ruling to the prejudice of the plaintiffs in error? It is not enough to show an erroneous ruling, but it must be one that prejudices the party complaining and this must affirmatively appear from the record—*Taylor* v. *Boughner,* 16 W. Va. 327; *Johnson* v. *Jennings,* 10 Gratt. 1.

The evidence of the plaintiff, Edgell, that he had sent his son, Lloyd, down the river "to see about gathering these ties, and to see if they were gathering them on the contract

that had been made," *tended* to show that his son went by his direction for the purpose stated and that he was, therefore, his agent for that purpose. It was then a question for the court to decide whether or not this testimony tended to prove the agency. It is true the father also stated that his son Lloyd did not go as his agent, but this was merely his conclusion of the legal effect of the authority given the son, and not a fact of itself. It was for the jury, taking into consideration the authority given the son and this denial of the agency by the father to decide whether or not the son was in fact the agent of the plaintiffs. If the evidence tended to prove the agency, as I think it did, it was not the province of the court to exclude it, or the declarations of the son based on the assumption that he was such agent, merely because it did not think the evidence sufficient to establish the agency. This was the province of the jury and not of the court. The court did not, therefore, err in permitting the witness Ankrom to answer the question propounded to him.

It does not follow, however, that because the question was admissible, the court did not err in refusing to exclude any part of the answer thereto if it was improper. Whatever was said or done by the son in the execution of his agency was certainly admissible and it was proper to prove the same. Assuming that he was agent, as the jury might have found him such, then, clearly the whole answer of the witness, Ankrom, was admissible unless that part of it was improper which states that, "Lloyd Edgell replied that, if you will do it, we will take Thompson for it." But in order to show affirmatively that this statement prejudiced the plaintiffs in error, the fact, whether or not the defendants accepted this offer, should appear. This was a mere offer or conditional proposition which if assented to and acted upon might have been considered by the jury as an agreement to release the defendants and take Thompson for the ties. But, if not assented to or acted upon by the defendants, it amounted to nothing and could not prejudice the plaintiffs in error. It was the duty of the exceptors to state this additional fact, if it was to their prejudice, in their bill of exceptions and thus make it appear affirmatively that they were prejudiced; but having failed to do so they cannot upon that ground obtain

a reversal by this Court—*Hollister* v. *Reynor*, 9 Ohio St. 1; *Nease* v. *Capehart*, 15 W. Va. 300.

The third bill of exceptions is to the effect, that the defendants introduced one Green as a witness, who testified that in the years 1881 and 1882, he acted as clerk for one David Thompson and that he was still in his employ as such; that Thompson was then engaged in purchasing cross-ties and lumber and resided in the State of Ohio from March, 1882, to May, 1883, and then removed to the State of Michigan where he now resides; that a copy of a paper was handed to the witness and it was identified by him as a copy of a paper delivered by him to the plaintiff Edgell on September 4, 1882, and defendants then proposed to offer said copy in evidence to the jury, to which the plaintiffs objected and the court refused to admit the same. The defendants then proposed to prove the contents of the original paper and in order to do so offered the following evidence of its loss: That the original paper was formerly in the hands of said Thompson, and when he moved to Michigan he left his papers with the witness, Green, who saw among said papers a portion of said original paper. The portion so found was a statement of figures and dates footing up three hundred and seventy-nine with the following written under it:

"I have the above number of ties in my possession, and will settle with the bearer of this for same, less the expense of gathering the same, which is about eleven and one half cents per tie."

"Sept. 4, 1882.                    DAVID THOMPSON."

The witness could not tell where the other portion of the paper was; that he copied the due bill portion and then burnt the original of the portion thus copied. This being all the evidence on that point the court permitted the defendants to prove by oral testimony the contents of said original paper, to which oral testimony going to the jury the plaintiff objected and their objection being overruled by the court they excepted.

This exception fails to state the testimony given of the contents of this paper, and therefore, it may be questionable whether it is not obnoxious to the rule, that where a ques-

tion is propounded to a witness which is objected to and the objection overruled, or where the exception is to the rejection or admission of a written document, if the bill of exceptions does not state the answer of the witness in the one case, or the written document in the other, the appellate court will not reverse the judgment—*Johnson* v. *Jennings*, 10 Gratt. 1; *Stoneman's Case*, 25 Id. 887; *Fowler* v. *Lee*, 4 Munf. 373; 2 Tuck. Com. 294.

But waiving the question of the sufficieny of the bill of exceptions, it seems to me the court did not err. The only question raised by this exception is, was the evidence adduced sufficient to lay the foundation for the introduction of secondary evidence of the contents of said paper? Either the loss or destruction of the paper would entitle the party to prove its contents unless the destruction was fraudulent—Best on Ev. § 482. If the original is shown to be in the possession of a non-resident of the State evidence of its contents or a copy may be produced as evidence—*Vinal* v. *Gilman*, 21 W. Va. 301.

It is not necessary that all the possible evidence of the loss or destruction of the original paper should be exhausted. The sufficiency of such evidence is a preliminary question addressed to the descretion of the judge and "the object of the proof is merely to establish a reasonable presumption of the loss or destruction."—Greenl. Ev. § 558; *Bouldin* v. *Massee* 7 Wheat. 122.

In the case before us the evidence was positive that a portion of the original had been burnt by the witness and that the other portion was last seen in the possession of Thompson, a non-resident of the State. It is not clear from the bill of exceptions what portion of the paper was found among Thompson's papers, but, it seems, whatever portion was so missing was either burnt or could not be found. If only a part of it had been destroyed, the defendants were unable to produce the whole of it and were consequently entitled to prove its contents. There is no suggestion that its destruction was fraudulent or that the party who destroyed it had any interest or even bias in the matter. I think, therefore, secondary evidence of its contents was admissible and that the court did not err in so ruling.

For the reasons aforesaid I am of opinion that the judgment of the circuit court should be affirmed.

AFFIRMED.