# CHARLESTON.

PEYTON *v.* HOLLEY *et als.*

Submitted May 14, 1913. Decided May 20, 1913.

1. MUNICIPAL CORPORATIONS—*Bipartisan Commission.*
    The charter of the City of Charleston, providing for bipartisan commission government, does not limit party representation to the political parties established and maintained for general purposes. For any municipal election held under it, new parties may be formed out of members of pre-existent parties. (p. 541).

2. SAME—*City Council—Membership.*
    A candidate of a new party entitled to a seat in the city council, under the terms of said charter, cannot be denied

such right, because the party he represents was formed by members of an old party and bears its name qualified by the word "independent." (p. 541).

Petition by C. P. Peyton for writ of mandamus against J. A. Holley and others.

*Writ Awarded.*

*Mollohan, McClintic & Mathews,* for petitioners.

*John A. Thayer, T. S. Clark* and *L. D. Vickers,* for respondents.

POFFENBARGER, PRESIDENT:

In the city election held in Charleston, April 21, 1913, under its charter providing what is known as the commission form of municipal government, candidates were nominated, under the general election law, applicable to city elections, on five tickets, Democratic, Independent Democratic, Independent Republican, Progressive and Republican. Candidates were placed on all of them for members of the council, each ward being entitled to elect four, not more than two of whom belonging to the same political party are eligible to seats in the council at the same time. Under the law, the four candidates receiving the highest number of votes are declared elected, provided only two of the four can be taken from the candidates of one party.

In the seventh ward, the two regular Democratic nominees had very considerable leads over all others. Next to them came H. S. Mathews, a Progressive candidate with 207 votes. Next to him stood C. P. Peyton on the Independent Democratic ticket with 190 votes, and then L. D. Vickers on the Progressive ticket with 170 votes. On this result, the Board of Affairs, acting as a canvassing board, declared Mathews and Vickers elected along with the two candidates on the regular Democratic ticket, leaving Peyton out, with more votes than Vickers had, because he had always affiliated with the Democratic party in national, state and some local elections, and had run on what was known in the city election as the Independent Democratic ticket. Peyton asks a writ of mandamus to compel the Board of Affairs to re-assemble as a board of canvassers and declare him elected.

A voter may belong to one political party for state and na-

tional purposes and another for municipal purposes, and his party affiliations generally do not class him politically as to municipal elections. *Hasson* v. *Chester,* 67 W. Va. 278. And a new political party can be formed at any time for a particular election or for participation in elections generally. *Morris* v. *Ballot Commissioners,* 76 S. E. 446. These cases assert the right of such parties to have the names of their candidates printed on the ballots, when nominated as provided by law. Peyton was so nominated as a candidate of a new party. That his party may have been composed entirely of former democrats is immaterial. In the general election of last year, we had a new party composed of former republicans, and in 1896, there was a new party, called the National Democratic party, composed entirely of former democrats.

Nothing perceived in the Charter of the City of Charleston modifies this general law. Of course it is intended to secure bi-partisan government, but it does not contemplate indestructibility of existing parties nor endeavor to prevent the birth of new ones. Nor does it contain any expression of intent to limit the right of party participation in city elections to the political parties maintained for general political purposes. To give the statute such a construction, it would be necessary to depart from its language and treat it as containing terms the legislature did not use.

If bad faith on the part of members of an existing party in nominating candidates as representatives of a pretended not real, new party would vary the rule, we have no proof of it here, and it is, therefore, unnecessary to enter upon an inquiry as to the effect of such conduct.

The relator challenges the constitutionality of the statute, declaring it to be within the inhibition of test oaths and other restrictions upon individual right, but nothing presented here calls for an inquiry as to its validity. It is not necessary to a decision of the case, and courts will not pass upon that kind of a question except in cases of such necessity. *Edgell* v. *Conaway,* 24 W. Va. 747; *Shepherd* v. *Wheeling,* 30 W. Va. 479; *Rutter* v. *Sullivan,* 25 W. Va. 427.

These conclusions result in the award of the peremptory writ asked for.

*Writ Awarded.*