MARY A. GRAY, as Administratrix of the Estate of BERNARD GRAY, Deceased. Appellant, *v.* SIEGEL-COOPER COMPANY, Respondent.

NEGLIGENCE — DEATH CAUSED BY FALLING FROM ELEVATOR — ERRONEOUS NONSUIT. The facts examined in an action to recover for the death of plaintiff's intestate, who was killed while delivering goods to the defendant in its department store by falling from an elevator through a space between it and the wall, and *held*, that a nonsuit was erroneously granted where, considering both the evidence received and that improperly

excluded, questions of fact were presented as to whether decedent could or ought to have seen the opening, and whether the defendant was negligent in maintaining the elevator with a space large enough for a man to fall through and in permitting it to be used by persons delivering freight.

*Gray* v. *Siegel-Cooper Co.*, 111 App. Div. 926, reversed.

(Argued January 31, 1907; decided February 19, 1907.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered March 7, 1906, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*John J. Robinson* for appellant. Defendant owed plaintiff's intestate the duty of exercising reasonable care to render the elevator and shaft and their surroundings reasonably safe for his use. (*Beck* v. *Carter*, 68 N. Y. 292; Thompson on Neg. § 968; Ray on Neg. 119; *Erickson* v. *S. P. & D. R. Co.*, 41 Minn. 500.) The question of defendant's negligence should have been submitted to the jury. (*Eastland* v. *Clark*, 16 N. Y. 420; *Hart* v. *H. R. B. Co.*, 80 N. Y. 622; *Hayes* v. *Miller*, 70 N. Y. 116; *Barrett* v. *L. O. B. I. Co.*, 174 N. Y. 316; *Donnelly* v. *City of Rochester*, 166 N. Y. 318; *Cleveland* v. *N. J. S. Co.*, 125 N. Y. 306.) The question of Gray's freedom from contributory negligence should have been submitted to the jury. (S. & R. on Neg. [4th ed.] § 92; *Newson* v. *N. Y. C. R. R. Co.*, 29 N. Y. 383; *Hart* v. *H. R. B. Co.*, 80 N. Y. 622; *Woodworth* v. *N. Y. C. R. R. Co.*, 55 App. Div. 23; *Irish* v. *U. B. & P. Co.*, 103 App. Div. 45; *Hayes* v. *Miller*, 70 N. Y. 116; *Thurber* v. *H. R. Co.*, 60 N. Y. 330; *Eastland* v. *Clark*, 165 N. Y. 420.)

*Roger B. Wood, George Gordon Battle* and *Frederick C. Fishel* for respondent. The defendant owed no duty to the plaintiff except to abstain from willful or malicious injury. (*Victory* v. *Baker*, 67 N. Y. 366; *Flanigan* v. *A. G. Co.*,

3 N. Y. S. R. 867; *Castoriano* v. *Miller*, 15 Misc. Rep. 254; *Flanagan* v. *A. A. A. Co.*, 37 App. Div. 476; *Miller* v. *Brewster*, 32 App. Div. 559; *South Bend Iron Works* v. *Larger*, 11 Ind. App. 367; *Levery* v. *Nickerson*, 120 Mass. 306; *Billows* v. *Moors*, 162 Mass. 42; *McCarthy* v. *Foster*, 156 Mass. 511; *Zoebisch* v. *Tarbell*, 10 Allen, 385.) Even assuming the existence of any duty to the deceased, the plaintiff failed to show negligence on the part of the defendant. (*Dougan* v. *C. T. Co.*, 56 N. Y. 1; *Crocheron* v. *N. S. S. I. F. Co.*, 56 N. Y. 656; *Loftus* v. *U. F. Co.*, 84 N. Y. 455; *Lafflin* v. *B. & S. W. Ry. Co.*, 106 N. Y. 136; *Ryan* v. *M. Ry. Co.*, 121 N. Y. 126; *Frobisher* v. *F. A. T. Co.*, 151 N. Y. 431; *Gabriel* v. *L. I. R. R. Co.*, 54 App. Div. 41; *Race* v. *U. F. Co.*, 138 N. Y. 644.) The plaintiff failed to show freedom from contributory negligence; or, at best, the circumstances pointed as much to the negligence of the deceased as to its absence, or pointed in neither direction. (*Rudolph* v. *Montant*, 37 App. Div. 396; *Wieland* v. *D. & H. C. Co.*, 167 N. Y. 19; *Whalen* v. *C. G. Co.*, 151 N. Y. 70; *Cordell* v. *N. Y. C. & H. R. R. R. Co.*, 75 N. Y. 330; *Wiwirowski* v. *L. S., etc., R. R. Co.*, 124 N. Y. 420; *Neddo* v. *Vil. of Ticonderoga*, 77 Hun, 524; *Stephenson* v. *E. G. L. Co.*, 60 Hun, 77; *Weston* v. *City of Troy*, 139 N. Y. 281.)

HAIGHT, J. This action was brought to recover damages by reason of the death of the plaintiff's intestate, which it is alleged was caused by the negligence of the defendant.

Gray was in the employ of Schwartschild & Sulzberger, butchers, and had been directed to deliver a load of meat ordered by the defendant at its department store on Sixth avenue in the city of New York. He drove to the freight elevator on the southeast corner of the building and went up to the fourth floor where the meat was to be delivered, presumably for the purpose of giving notice that he had meat below to deliver, and then returned by the elevator to the ground floor. He was shortly followed by two employees of the defendant who assisted him in unloading the meat and placing

it in the elevator, and after they had done so the three got aboard of the elevator and were taken to the fourth floor where it was stopped to discharge the meat. It appears that the entrance to the elevator at the ground floor was from the outside through the wall; that the entrance or exit from the elevator car on the floors above was from the opposite side directly into the rooms in the building; that the wall of the building receded from the elevator shaft, by reason of the fact that it was not maintained of the same thickness up to the top of the building, but was lightened by constructing the wall thinner as it progressed upwards from story to story; the shaft was seven stories high and covered at the top with a skylight, and at the place where the elevator stopped at the fourth floor there was a space in the rear of the platform between it and the wall of the building of from ten and one-half to eighteen inches, as appears from the conflicting testimony upon that subject. There was also some conflict in the testimony of the witnesses as to whether the light in the elevator car was sufficient so that the opening between the platform and the wall of the building could be readily seen. The elevator was supplied with a rack or rail overhead in a U shape, upon which the meat was hung, and on the ceiling of the fourth floor there was a rail corresponding with that in the elevator car, by which they could shove the meat hanging upon the rail in the car back through the room to a place where it was weighed and receipted for. The elevator was operated by a man employed for that purpose. After the elevator stopped at the fourth floor, Gray assisted the others in shoving the meat out of the elevator car, and while so engaged he stepped backward off from the platform of the car through the hole between it and the wall, and fell down through the elevator shaft and was killed.

Gray was a stranger, making his first delivery of meat to the defendant. All of the knowledge that he appears to have had with reference to the elevator was that which he derived from his trip up to give notice of the arrival of the meat. The question as to whether he could see or ought to have

seen the open space between the car and the wall at the fourth floor depended to some extent upon the amount of light at that place. Some of the witnesses described it as very dull, while others thought it was quite bright. We think the question as to whether he saw or ought to have seen the open space was a question of fact for the jury. As to other conflict between the witnesses with reference to the breadth of the space between the car and the wall, we have the conceded fact admitted by all of the witnesses who were present that it was large enough for this man to fall through, and he appears to have been of the height of about five feet eight inches, weighing one hundred and fifty-six pounds. The question is, therefore, presented as to whether the defendant was negligent in maintaining this elevator in such a condition. The contention of the defendant is that the elevator was maintained for freight only, and that such a notice was posted over the door and that it was not intended for passengers. It appears, however, that the elevator was operated by a man in the employ of the defendant; that he took Gray up on his arrival with the meat, brought him back and operated the elevator when he took the meat and the workmen up. It further appears that there was some evidence given and more offered tending to show that for a long time before it had been customary for those delivering freight upon the fourth floor of the building to use this elevator in taking the freight up and delivering it without objection on the part of the defendant or those in charge of the elevator, that it was not intended for such purpose; but this evidence, so far as taken, was stricken out by the court upon the motion of the defendant's counsel and that which was offered was ruled out as incompetent and not material. We think it was quite material as bearing upon the negligence of the defendant. If the defendant had maintained this elevator for years for the purpose of carrying passengers or those who were engaged in delivering goods upon the different floors of this store, leaving an open and unprotected space between the platform and the wall through which passengers might fall, it would tend to show to a certain

extent that it was negligent on this occasion in permitting the decedent to enter the elevator car by the person in charge without calling his attention to the dangerous opening on the floor upon which he was to transact his business. It is true that it did not distinctly appear that Gray knew of the custom which the plaintiff sought to prove, and yet he was a stranger, making his first delivery of goods, and he must have been advised, to some extent, of the way in which goods had been delivered before, for he drove his wagon to this elevator, then went to the fourth floor to give notice, and again ascended with the meat and the employees who had helped him to remove the meat to the elevator car, presumably to attend to the weighing of the meat and getting his receipt therefor at the place where it was delivered. Exceptions were taken by the plaintiff's counsel to the exclusion and the striking out of this evidence. We think the court erred in excluding it, and that in determining the question as to whether a nonsuit was warranted it should be treated as evidence in the case.

Again, immediately after Gray had fallen down the elevator shaft, a policeman upon the beat was called, and he, finding that Gray was already dead, had the body sent to his police station. He then, within twenty minutes after the finding of the body, as he tells us, made an examination of the elevator car at the fourth floor; found the light dull, and the space between the platform and the wall, as near as he could estimate, eighteen inches in breadth, and that the floor of the elevator was greasy. Objection was made to this and the court struck it out, and the plaintiff took an exception. Afterwards, the defendant was permitted to prove by its witnesses that the floor was not greasy. We think the testimony of the policeman was competent. It is true he was not speaking of the precise moment that the decedent fell from the car, but it was within a very few minutes thereafter. It was as soon as he could arrange to have the body taken to the station house, within twenty minutes or half an hour. It was not claimed that the condition of the floor had in the meantime been changed. It was not so remote from the time of the accident as to make it

immaterial or incompetent. We think this evidence may also be considered upon the question as to whether there should have been a nonsuit. The question as to whether the floor was greasy and as to whether it was dark in the elevator car, or the light dull, bears upon the question of the contributory negligence of the decedent, and the evidence with reference to the maintaining of the elevator by the defendant for the use of persons delivering freight or goods upon the different floors of the store bore upon the question of defendant's negligence in maintaining it in the condition in which it was on this occasion. We think the evidence presented a question of fact for the jury, and that the nonsuit was erroneously granted.

The judgment should be reversed and a new trial granted, with costs to abide the event.

CULLEN, Ch. J., GRAY, VANN, WERNER, WILLARD BARTLETT and CHASE, JJ., concur.

Judgment reversed, etc.