ADOLPH J. POPPER, JR., an Infant, by ESTHER TREMER, His Guardian ad Litem, et al., Appellants, *v.* CITY OF NEW YORK et al., Respondents.

AMERICAN ICE COMPANY, Third-Party Plaintiff, *v.* CITY OF NEW YORK, Third-Party Defendant.

CITY OF NEW YORK, Third-Party Plaintiff, *v.* AMERICAN ICE COMPANY, Third-Party Defendant.

First Department, December 16, 1952.

*Alexander E. Rosenthal* of counsel, (*Edward A. Scott, Jr.* and *John F. Mulvey,* attorneys for Donato Cecchino and others, appellants; *Gilbert S. Rosenthal,* attorney for Adolph Joseph Popper, Jr., and another, appellants; *Morris Cukor,* attorney for Irene Mazzini, appellant; *George Goodstein,* attorney for Clementine R. Shanks, appellant; *Harold R. Kaplan,* attorney for Nicholas C. Sloane and another, appellants; *Richard M. Cantor,* attorney for Francis J. Mulligan, appellant), for appellants.

*Andrew Bellanca* of counsel (*Seymour B. Quel* with him on the brief; *Denis M. Hurley, Corporation Counsel,* attorneys), for City of New York, respondent.

*Harry A. Gair* of counsel (*Benjamin H. Siff* with him on the brief; *William S. O'Connor,* attorney), for American Ice Company, respondent.

BREITEL, J. Plaintiffs appeal from dismissal, at the close of plaintiffs' case, of their complaints against the American Ice Company and the City of New York. This consolidated action involves liability in negligence for twenty-eight deaths, sixteen personal injuries and two claims for property damage.

The complaints were properly dismissed as against the City of New York, there being clearly no evidence to fix liability upon the city. That aspect of the case will be discussed no further. With respect to the ice company we believe that error was committed, requiring reversal of the judgment in favor of the ice company and the granting of a new trial.

On December 12, 1946, at about 1:00 A.M., there was a fire in the ice storage building owned by the ice company. It had been vacant and unused, except for the portion used as a garage for over ten years. The building was a huge hollow box-like structure with massive brick walls, twenty to thirty-six inches thick. The interior walls were lined with cork insulation. A part of the wall was on fire at the southeast corner. The flames rose from the bottom almost to the top of the structure. Firemen were present at the time of the accident and believed that the fire was under control. Then the north wall suddenly collapsed, falling away from the building, upon an adjoining tenement house. It was the occupants of the tenement house who were the victims of the catastrophe involved in this action.

The ice company is charged with neglect in the maintenance of the building and particularly of the wall that collapsed. The complaints having been dismissed at the close of plaintiffs' case, plaintiffs are entitled to the benefit of every favorable inference and intendment of their evidence.

The cause of the fire is unknown. A few hours earlier there had been a fire on the bulkhead atop the building. It had been extinguished by firemen. The instant fire resulted in an alarm at 11:59 P.M. on December 11th, to which the firemen responded. It was about an hour later, and when the fire was believed to be under control, that the wall collapsed. There is no evidence to associate directly the fire with the collapsing of the wall; nor is there any evidence to associate the activities of the fire-

men with the collapse of the wall. The ice company argues that the fire expanded the steel beams at the top of the building thus forcing apart the walls, into which the beams were anchored. However, the firemen testified that there was no perceptible heat in the bulkhead or on the roof. The coincidence of fire and collapse of the wall, if they were independent of each other, is remarkable, but there is in the record no extrinsic evidence of causal relation. Of course, it was not to plaintiffs' interest to show such causal connection, and the ice company was never obligated to present its evidence.

The claim of neglect on the part of the ice company consists of two elements. The first is the failure generally to repair and maintain the building for the previous ten years to the point where it became a menace. The second is that for a period of years there was a crack in the wall, ranging in width from one thirty-second of an an inch to an inch and a half, extending from the ground to the roof, and visible for a distance of about fifty feet. The description of the crack as an inch and a half wide is taken from that witness whose testimony was most favorable to plaintiffs. In fact, the testimony as to the crack varied considerably from witness to witness. The contention is that the ice company had constructive notice of it and that there was a specific failure to repair with respect to it. It is claimed that the crack was along the line where the north wall broke from the building and then collapsed during the fire. There was no evidence of the depth of the crack, apart from its width and length.

At this point it should be noted that the proof as to the location and extent of the fire was offered chiefly through pretrial examinations of the city firemen, to which examinations the ice company was not a party and by which it was concededly not bound. Hence, any theory of *res ipsa loquitur* insofar as the collapsing wall is concerned is not before us. As to the fire, on the record before us so far as the ice company is concerned there was a fire and a collapsing wall. The doctrine may not be invoked, the fire in the first instance being sufficient, for the purposes of the doctrine, to account for the collapsing wall. Hence, plaintiffs were obligated to establish evidence of the ice company's negligence, before the latter could be held liable.

On the first element of neglect plaintiffs offered the testimony of one Gette, an architect, and an earlier report prepared by him concerning the building. The testimony and the report

were excluded. Gette had been retained in a tax reduction proceeding by the ice company that previous summer. He testified as follows, before the testimony was stricken:

" Then I went to the ice manufacturing plant and I found the exterior of that, I would say, in poor condition. They had a loading platform on the back that had been taken down. The steel beams that stuck out to support the roof were loose, and in general it was very poorly maintained.

" I saw some of the bricks that had fallen. From where I don't know. There was brick on the sidewalk toward the wall of the manufacturing plant, and I went inside of the manufacturing plant and I found the stairs were rusty, and I had to keep right up to the wall, near the wall, in going up. At my age I didn't like to fall down the stairs.

" So I went up on the stairs and I found that rusted. I also saw some of the beams inside of the manufacturing plant, where the concrete had been, either fallen off or broken off, and the beams, some of the beams, were exposed; parts of the beams exposed and rust showed on them.''

Gette was not a friendly witness, and perhaps it is reasonable to say that he was hostile. He had been retained by the ice company that summer to help in obtaining a tax reduction. His testimony, of which the above is an example, was stricken on the ground that it was not related specifically to the wall that collapsed. That which is descriptive of the whole may be descriptive of the parts. The record is not clear that plaintiffs are entitled to that inference, but in any event, plaintiffs were entitled to explore the issue, to this extent and further, with a witness who was not friendly. Hence, exclusion of the testimony was error. That does not mean that we believe that Gette's testimony as it stood in its restricted form, before being stricken, sufficiently related the wall that collapsed with the generally deteriorated condition of the building. It does mean that Gette's testimony, as far as it went, should have remained, and that plaintiffs should have been allowed to pursue the issues with Gette further to see whether they could directly or indirectly establish such a relationship. What we say hereinafter about Gette's report is also pertinent to plaintiffs' right to further explore the extent of the building's deterioration and the general neglect of this uncommon structure.

In addition to Gette's oral testimony, plaintiffs offered the report he had prepared for the tax reduction proceeding and which had been received in Supreme Court in that proceeding. This report read in part as follows:

" The building comprising the several units as stated has been vacant, except for the garage section, for over ten years and the manufacture of ice has been abandoned. The building, while suffering from the unusual depreciation caused by the business that was operated in it, has on top of all this the added depreciation of utter neglect since the building was last operated.

" Visible signs of this are only too prevalent even on a most casual inspection.

" The building materials and structural members have deteriorated to an almost dangerous condition.

" Then this building, in addition, lacks the convertibility to a possible other use and in my opinion should be demolished."

A majority of this court agrees that this report was not admissible, stressing the purpose for which it had been prepared, and considering the fact that it does not relate specifically to the wall that collapsed. (The ice company stresses that Gette testified that " all the walls were substantial because they were all heavy walls.") The court is entirely agreed, however, that the report should have been available to plaintiffs in examination of Gette. The trial court effectively prevented such use on the examination, evidently on the technical ground that Gette was plaintiffs' witness. This too was error, in the light of Gette's testimony on the trial, and for the reason that we believe such testimony should not have been excluded or restricted as it was.

Concerning the crack in the collapsed wall, on which the testimony was not too satisfying, but on which we believe plaintiffs are entitled nevertheless to rely in questioning the dismissal of their complaints, we again have an erroneous exclusion. The ice company argued, and still argues, that the proof of the crack is insufficient because there was no evidence of the depth of the crack, as distinguished from its width and length. That we cannot say is so as a matter of law. And at this juncture it would have been helpful to have expert testimony as to the significance of such a crack, and the significance of knowledge of depth of the crack in forming an opinion. Plaintiffs offered substantially such testimony through one Professor Squire, an engineer, and teacher of engineering. Although the ice company's attorney initially did not object, the trial court excluded that testimony.

Accordingly, we must assume for the purposes of this appeal that Professor Squire's testimony would have been to the effect

that the crack as described in the evidence (without proof of depth) was a competent producing cause of the wall collapse. The plaintiffs' theory then would be that the defective wall alone was the competent producing cause of the accident or that the fire (for which the ice company has not been shown to be responsible) and the defective wall were concurrently the competent producing and proximate cause of the accident (*Forte* v. *City of Albany*, 279 N. Y. 416, 422; *Foley* v. *State of New York*, 294 N. Y. 275, 280).

It will still be for the trial court to determine whether there is sufficient evidence to go to the jury as to the crack, the defectiveness of the wall, the relationship of that defectiveness to the collapse of the wall and defendant's responsibility in negligence therefor.

Mere variation in strength of walls or other structural parts of a building would not meet the test of liability unless the elements of causation are clearly made out including that of foreseeability. It must, to hold defendant, appear that the alleged defectiveness of the wall was a cause *sine qua non* of the collapse.

The conclusions here reached are based upon giving plaintiffs the most favorable inferences viewed at the close of their case. Upon the whole case it will still be their responsibility to establish that the defendant was negligent in a manner specifically charged and that such negligence caused or was concurrently a cause of the fall of the wall. (*Ingersoll* v. *Liberty Bank of Buffalo*, 278 N. Y. 1, 7.) In the *Ingersoll* case, it was said: '' Where the facts proven show that there are several possible causes of an injury, for one or more of which the defendant was not responsible, and it is just as reasonable and probable that the injury was the result of one cause as the other, plaintiff cannot have a recovery, since he has failed to prove that the negligence of the defendant caused the injury. (*Ruback* v. *McCleary, Wallin & Crouse*, 220 N. Y. 188; *Digelormo* v. *Weil*, 260 N. Y. 192.) This does not mean that the plaintiff must eliminate every other possible cause. ' The plaintiff was not required to offer evidence which positively excluded every other possible cause of the accident.' (*Rosenberg* v. *Schwartz*, 260 N. Y. 162, 166.) ''

Plaintiffs' burden is not easily met, despite the more liberal rule in death cases (*Noseworthy* v. *City of New York*, 298 N. Y. 76). It is still a remarkable circumstance that the north wall should fall during a fire without the fire being the effective cause

of the collapse. Hence, to establish the ice company's liability, plaintiffs must show by affirmative proof that the wall collapsed solely because of the ice company's neglect of a defect therein of years' standing, without reference to the fire; or that the neglect of the defective wall and the fire operating concurrently produced the accident.

Accordingly, the judgment dismissing the complaints as against the City of New York should be affirmed, with costs to respondent city, and the judgment dismissing the complaints as against the American Ice Company should be reversed, and a new trial granted, with costs to the appellants to abide the event.

PECK, P. J., DORE, CALLAHAN and VAN VOORHIS, JJ., concur.

Judgment dismissing the complaints as against the City of New York unanimously affirmed, with costs to the respondent city; judgment dismissing the complaints as against the American Ice Company unanimously reversed and a new trial ordered, with costs to the appellants to abide the event.