Frank CERESTE, Plaintiff-Appellee,

v.

The NEW YORK, NEW HAVEN and HARTFORD RAILROAD COMPANY, Defendant-Appellant.

No. 55, Docket 23529.

United States Court of Appeals Second Circuit.

Argued Oct. 10, 1955.

Decided March 1, 1956.

Writ of Certiorari Denied May 28, 1956.

See 76 S.Ct. 848.

Robert M. Peet, Edward R. Brumley, New York City (Frank A. Fritz and John G. Paré, New York City, of counsel), for appellant.

Cohen & Fuchsberg, New York City (Jacob D. Fuchsberg and B. Hoffman Miller, New York City, of counsel), for appellee.

Before FRANK, HINCKS and WATERMAN, Circuit Judges.

FRANK, Circuit Judge.

■ 1. The evidence sufficed to support a verdict that defendant had been negligent in not providing plaintiff a safe place to work. It was for the jury to determine whether the presence on the path of the coal, on which plaintiff tripped, constituted negligence.[1]

2. Defendant, on cross-examination of plaintiff, brought out evidence tending to show that, before trial, he had stated to some of defendant's representatives that he did not know what caused him to stumble. Defendant offered no written statement signed by plaintiff. Even if we assume that this pre-trial statement flatly contradicted his trial testimony, the jury, of course, could disregard the former and believe the latter.

3. It might be argued that actual or constructive notice to defendant was not necessary since defendant had control of the premises and therefore its conduct was the sole cause of the dangerous condition found by the jury to have existed at the time of the accident.[2] But we need not consider that argument since the evidence of such notice was ample.

■ Several of defendant's employees testified that, in April 1949 and previous-

1. Southern Ry. Co. v. Puckett, 244 U.S. 571, 37 S.Ct. 703, 61 L.Ed. 1321; Brown v. Western Ry. of Alabama, 338 U.S. 294, 70 S.Ct. 105, 94 L.Ed. 100; Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. 610; Bailey v. Central Vermont Ry., 319 U.S. 350, 63 S.Ct. 1062, 87 L.Ed. 1444.

2. See Southern Ry. Co. v. Puckett, 244 U.S. 571, 37 S.Ct. 703, 61 L.Ed. 1321; Tash v. St. Louis-San Francisco Ry. Co., 335 Mo. 1148, 76 S.W.2d 690. But cf. Baltimore & Ohio Ry. Co. v. Flechtner, 6 Cir., 300 F. 318.

ly, they had seen coal falling on the path between tracks 9 and 10 from coal cars bumping against one another. We think it was not error to receive evidence as to coal thus falling in other parts of the yard or at times other than April 1949, for such evidence was relevant as showing the practice as a result of which coal was likely to be found on the path where the accident occurred. But even if reception of this evidence was error, it could not have been prejudicial in the light of the overwhelming proof that coal had so fallen on that path at the approximate time of the accident. Moreover, constructive notice to defendant was also shown by plaintiff's testimony that he had seen coal scattered along that path one week before the accident.

■ Evidence was received that an employees' Safety-First Committee had notified the defendant in 1947 and 1948 that coal scattered in its yard constituted a menace to the employees working there. Since the accident occurred on April 11, 1949, we do not think that this evidence was too remote. Nor did the defendant object to it on that basis but solely because it was not limited to the area of the accident. However, we think that evidence of the complaints, which referred to the condition of the yard as a whole, was admissible to show that defendant had notice of the condition of the path between tracks 9 and 10, a subject which apparently was included in the Committee's general complaint.

■ 4. The trial judge admitted evidence of past conduct of the defendant, apparently because it showed a habit of negligence. Thus testimony was admitted, over defendant's objection, that a substantial number of defendant's employees assigned to clean-up and construction work had been used solely for construction work in April, 1949 and

previously; that only a small force had been left in the Oak Point yard, where the accident occurred, to take care of emergencies; and that clean-up operations did not normally constitute an emergency.

In negligence cases not based on F.E.L.A., most courts have held such evidence inadmissible.[3] Wigmore says, "Of course, in all other affairs of life, except in a court-room, one does give weight to what one knows of a person's careful or negligent character, in judging upon the probable facts." Noting that the courts, in rejecting such evidence, do so because "there is too much risk" of prejudicing juries, he remarks, "Nevertheless, it seems unreasonable to exclude what may be useful evidence." [4] And he says also, "To evidence a party's conduct that has led to a personal injury, a habit of certain careful or negligent conduct has probative value." [5] A considerable number of decisions hold such evidence admissible when there were no eyewitnesses to the occurrence.[6] This exception lacks reason; for, if the evidence is highly prejudicial, it is no less so when eyewitnesses are unavailable.

McCormick, in his recent thoughtful treatise on Evidence (1954), says (Section 162): "Character and habit are close akin. Character is a generalized description of one's disposition, or of one's disposition in respect to a general trait, such as honesty, temperance, or peacefulness. 'Habit,' in modern usage, both lay and psychological, is more specific. It describes one's regular response to a repeated specific situation. If we speak of character for care, we think of the person's tendency to act prudently in all the varying situations of life, in business, family life, in handling automobiles and in walking across the street. A habit, on the other hand, is the person's reg-

3. McCormick on Evidence (1954) pp. 325, 342; 1 Wigmore, Evidence (3d ed.) Sections 65, 97.

4. Wigmore, Evidence, Students' Textbook (1935) Section 35.

5. Ibid. Section 43.

6. See Boone v. Bank of America Nat. Trust & Savings Association, 220 Cal. 93, 29 P.2d 409; Young v. Patrick, 323 Ill. 200, 153 N.E. 623; Toledo St. L. & K. C. Ry. Co. v. Bailey, 145 Ill. 159, 33 N.E. 1089; McCormick on Evidence (1954) p. 342.

ular practice of meeting a particular kind of situation with a specific type of conduct, such as the habit of going down a particular stairway two stairs at a time, or of giving the hand-signal for a left turn, or of alighting from railway-cars while they are moving. The doing of the habitual acts may become semi-automatic. Character may be thought of as the sum of one's habits though doubtless it is more than this. But unquestionably the uniformity of one's response to habit is far greater than the consistency with which one's conduct conforms to character or disposition. Even though character comes in only exceptionally as evidence of an act, surely any sensible man in investigating whether X did a particular act would be greatly helped in his inquiry by evidence as to whether he was in the habit of doing it. We are shocked, then to read such judicial pronouncements as the following: 'For the purpose of proving that one has or has not done a particular act, it is not competent to show that he has or has not been in the habit of doing other similar acts.' But surely, if 'habit' is used in the sense we have suggested above, expediency and sound reason would lead to the opposite approach, namely, that evidence that an act was habitually done by X under like circumstances will be received as evidence that it was done by X on the particular occasion. Nevertheless, the judge should possess the discretion usual in this field of circumstantial evidence to exclude if the habit is not sufficiently regular and uniform, or the circumstances sufficiently similar, to outweigh the danger, if any, of prejudice or confusion. The reluctance of some courts to accept this view of the general admissibility of habit to show an act, and the doctrine of other courts that evidence of habit will be received only when there are no eyewitnesses, are probably due to a failure to draw a clear line between character and habit. This is contributed to by the popular custom of describing character in terms of 'habits,' such as 'habits of care' or 'habits of intemperance.' In consequence these courts mistakenly apply to evidence of specific habit, the restrictions developed for the far less probative and more prejudicial evidence of character. On the other hand, evidence of the 'custom' of a business organization or establishment, if reasonably regular and uniform is usually received much more willingly by the courts, perhaps because there is here no temptation to confuse this with evidence of character. Thus it is usually held that when a letter has been written and signed in the course of business and placed in the regular place for mailing, evidence of the custom of the establishment as to the mailing of such letters is receivable as evidence that it was duly mailed. Proof of the existence of the person's habit or of the custom of the business may be made by testimony of a witness to his conclusion that there was such a habit or practice. It also may be made by evidence of specific instances, though these later would be subject to the judge's discretion to require that the instances be not too few or too many, and that the time be near and the circumstances be sufficiently similar." See also Model Code of Evidence (A.L.I.1942) Rule 307; Uniform Rules of Evidence (1953) Rule 50.

The Supreme Court has construed F.E.L.A. in a manner most generous to employees,[7] presumably on the theory

---

7. Cahill v. New York N. H. & H. R. Co., 2 Cir., 224 F.2d 637, reversed 350 U.S. 898, 75 S.Ct. 180; Lavender v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916; Jesionowski v. Boston & Maine R. Co., 329 U.S. 452, 67 S.Ct. 401, 91 L.Ed. 416; Ellis v. Union Pacific R. Co., 329 U.S. 649, 67 S.Ct. 598, 91 L.Ed. 572; Lillie v. Thompson, 332 U.S. 459, 68 S.Ct. 140, 92 L.Ed. 73; Johnson v. United States; 333 U.S. 46, 68 S.Ct. 391, 92 L.Ed. 468; Wilkerson v. McCarthy, 336 U.S. 53, 69 S.Ct. 413, 93 L.Ed. 497; Affolder v. New York, C. & St. L. R. Co., 339 U.S. 96, 70 S.Ct. 509, 94 L.Ed. 683; Stone v. New York, C. & St. L. R. Co., 344 U.S. 407, 73 S.Ct. 358, 97 L.Ed. 441; Smalls v. Atlantic Coast Line R. Co., 348 U.S. 946, 75 S.Ct. 439, 99 L.Ed. 740; see also Ruddy v. New York Central R. Co., 2 Cir.,

that the statute expresses a policy of unusually high regard for their protection. Absent any Supreme Court decision under F.E.L.A. excluding evidence of a habit of negligence, we think we should accept the more rational view; and we therefore hold that the trial judge did not "abuse" his discretion in receiving this evidence. Cf. Brown v. Western Railway of Alabama, 338 U.S. 294, 70 S. Ct. 105, 94 L.Ed. 100 (strict construction of the complaint by a state court, under state rules of practice, in an action under the F.E.L.A. is not binding on the Supreme Court on appeal from a dismissal of the complaint); Garrett v. Moore-McCormack Co., Inc., 317 U.S. 239, 63 S.Ct. 246, 87 L.Ed. 239 (burden of proof imposed by Pennsylvania law upon one attacking the validity of a written release is not applicable to seaman suing in the Pennsylvania courts under Section 33 of the Merchant Marine Act, 46 U.S.C.A. § 688). The writer of this opinion thinks we need not now decide whether we should apply the same evidence rule in cases not arising under F.E.L.A.

Aside, however, from the question of whether this evidence was admissible as tending to show a habit of negligence, it was relevant to show that clean up operations were not properly performed shortly before the accident. There was ample evidence showing that coal was present on the paths between tracks 9 and 10. There was also testimony in the record that only enough men were left in the Oak Point yard in April, 1949, and prior thereto, to take care of emergencies; and that clean up operations did not normally constitute an emergency. This evidence tended to show that clean up operations were not performed adequately, if at all, at the approximate time

of the accident. It was therefore relevant evidence and not too remote. Accordingly, its admission was not error.

5. Defendant made no request for a charge concerning notice. Accordingly, the judge did not err in his charge on that subject (quoted in the footnote),[8] especially as defendant did not except.

Judgment affirmed.

HINCKS, Circuit Judge (concurring).

Over objection evidence was received that on one occasion "within a period of several months before April 11, 1949" the defendant shifted 75 maintenance workers, on whom it relied for clean-up as well as maintenance work, from the Oak Point Yard to Van Ness, leaving 4 or 5 at Oak Point. Neither then nor thereafter was evidence offered that the number left at Oak Point was at any time inadequate for clean-up as well as maintenance tasks. This evidence, standing by itself, I think inadequate to prove the "habit" or "custom" of the defendant. As Wigmore noted, § 376, even in jurisdictions which admit evidence of habit, prior instances to have probative effect, must be shown not only to be numerous enough to furnish ground for inference but also "to have occurred under substantially similar circumstances so as to be naturally accountable for by a system only, and not as casual recurrences."

Moreover, in my opinion, this evidence had no probative force whatever in support of the appellant's contention that the defendant was negligent in the discharge of its duty to keep the yard reasonably safe for its workers. However, the evidence was admitted *subject to connection.* That ruling, I think, was not erroneous: for aught that then appeared,

224 F.2d 96, 98; Korte v. New York, N. H. & H. R. Co., 2 Cir., 191 F.2d 86, 88; Louisville & N. R. Co. v. Botts, 8 Cir., 173 F.2d 164, 166.

8. "Defendant's position is that it had no notice, real or constructive, of the presence of coal on the path, or, more particularly, the piece of coal upon which the plaintiff claims to have slipped.

"Defendant also argues that there is no proof, other than the testimony of the plaintiff, as to how long such coal or piece of coal was present, and that, accordingly, it cannot be held responsible since there was nothing that it did or could have done to prevent this accident. It also offered testimony that there was in fact no coal at the place where plaintiff was lying after the accident."

the evidence might later have been supplemented by evidence of further similar instances and, more important, by evidence that a working force of only 4 or 5 employees was inadequate to keep the Oak Point yard reasonably free from dangerous litter. At the time the evidence was received, appellant's counsel sought no promise by opposing counsel that it would subsequently be connected, nor at the close of the evidence, when it was apparent that no connecting evidence had been offered, did he move to strike. These factors considered, I think that the appellant is not entitled to complain of any prejudice resulting from the admission of this evidence.

█ █ As to all other claims of error I have no disagreement with my brothers.

WATERMAN, Circuit Judge (concurring).

Judge HINCKS and I concur in the result reached by Judge FRANK in his opinion for the Court. However, our reasons for affirming the admission of certain evidence introduced by the plaintiff and objected to by the defendant differ sufficiently from those of Judge FRANK and from those of each other so that I think it not inappropriate to append a separate statement of my views.

The evidence in question falls into four categories: (1) evidence concerning the general practice or custom of the defendant during and prior to April, 1949, when the injury sued upon occurred, of making cleanups and of making up trains containing coal cars in the railroad yard where the injury occurred; (2) evidence that coal had been seen on and between the tracks in such yard during April, 1949; (3) evidence that complaints were made to a safety committee of the defendant during 1947 and 1948 concerning debris and litter in such yard; and (4) evidence tending to show that prior to and during April, 1949, very few maintenance employees were available to do cleanup work in such yard because of transfers of men to jobs in other places.

1. *Evidence of Custom of Defendant of Making Cleanups and of Making Up Trains Containing Coal Cars.*

Various employees of the defendant were permitted to testify concerning the general practice of the defendant during and prior to April, 1949, concerning: (a) a procedure of cleaning up debris in the yard, including the path between tracks 9 and 10; (b) the method of making up trains containing coal cars; (c) the method of transferring coal from a defective car to a good car; (d) the use of tracks 9 and 10 as well as other tracks to make up trains containing coal cars; and (e) the method utilized by the defendant of coupling coal cars by impact, so that coal could be dislodged from coal cars and fall to the tracks.[1] All of this evidence was offered by the plaintiff to corroborate his testimony that his injury had been caused by tripping over a large piece of coal left by the defendant in the path between two tracks. It tended to show that pieces of coal might be present in the yard, and hence it bolstered the plaintiff's own statement that there was a piece of coal at the particular place of injury. It also tended to show that the defendant was aware that coal could litter the yard and that the defendant had a procedure for handling this problem.

█ I think it clear that this evidence as to the general practice or custom of the defendant was logically relevant, i. e., it was probative of the issue of whether or not a defective condition existed.[2]

---

1. All of this evidence was offered and admitted before there had been any proof of a defective condition in the path at the time of the accident. The trial judge realized this and so told the jury. He admitted the evidence subject to the condition that it be tied up by evidence showing a specific defective condition at the exact time and place of the injury. This condition was later fulfilled.

2. Proof of the existence of these customary practices was made in the form of conclusions on the part of defendant's employees that there were such practices. This is the method usually employed. See, e. g., Security Mut. Life Ins. Co.

Assuming the relevance of this evidence, the problem is then one of weighing the probative character of the evidence against the disadvantages attendant upon its admission. The dangers of this type of evidence are patent: it raises issues which tend to become progressively more remote from the narrow factual issue before the jury; it may consume an unnecessary amount of time and confuse the triers of facts; and it may prejudice the opposing party by showing its negligence in general or in respects which did not cause the particular injury in suit. But I think that this weighing of factors is a function that should remain, by and large, in the discretion of the trial judge. Only in the most extreme case should we upset a determination on his part that the probative value of the evidence outweighs the dangers it carries. In the instant case I cannot say that the trial judge abused the broad discretion which it was his part to exercise.

It may be that Rule 43(a) of the F.R. C.P., 28 U.S.C.A. requires us to search out and apply the applicable state rule of evidence here—absent a more lenient rule prescribed by a United States statute or derived from federal equity suits before the adoption of Federal Rules. See Schillie v. Atchison, T. & S. F. R. Co., 8 Cir., 1955, 222 F.2d 810. I am not certain either that Rule 43(a) completely eliminates any creative power on our part to modify rules of evidence applicable in federal court or that it would be erroneous for us to draw evidence rules from actions at law in the federal courts before the adoption of the Federal Rules.[3] Be that as it may, I think the evidence now under discussion was admissible under the rules of evidence of the applicable state, New York.

New York courts generally exclude evidence of an individual's habits when offered to prove the doing on a specific occasion of the act which is the subject of the "habit." Dubois v. Baker, 1864, 30 N.Y. 355, 369 (habit of carrying an inkstand held inadmissible to show that it was in his possession on a certain day); Zucker v. Whitridge, 1912, 205 N. Y. 50, 98 N.E. 209, 41 L.R.A.,N.S., 683 (habit of looking both ways before crossing streetcar tracks inadmissible to show due care on day of injury); Lefcourt v. Jenkinson, 1940, 258 App.Div. 1080, 18 N.Y.S.2d 160 (habit of opening door by pushing on glass panel held inadmissible to show lack of due care at time of accident); Grenadier v. Surface Transport Corp., 1946, 271 App.Div. 460, 66 N.Y.S. 2d 130 (evidence of two prior accidents of bus driver held inadmissible to show his negligence); Warner v. New York Cent. R. Co., 1871, 44 N.Y. 465 (habit of intemperance of railroad flagman held inadmissible to show intoxication at a particular time). These cases involve the "habits" of individuals, rather than the group practice, routine, or custom of a corporate entity. Nearly all courts, including those of New York, treat this latter type of evidence—which is that involved here—much more favorably than evidence respecting the habitual responses of individuals. See, e. g., Gray v. Siegel-Cooper Co., 1907, 187 N.Y. 376, 80 N.E. 201 (custom of those delivering freight to use defendant's elevator held admissible as bearing on defendant's negligence); Shannahan v. Empire Engineering Corp., 1912, 204 N.Y. 543, 98

v. Kleutsch, 8 Cir., 1909, 169 F. 104; McCormick on Evidence (1954) 343. The testimony indicates that these practices were repeated on numerous instances, some of them many times daily.

3. The evidence now under consideration might be considered admissible in the discretion of the trial judge on the basis of long-standing federal precedents in actions at law. See, e. g., Bouldin v. Massie's Heirs, 1822, 7 Wheat. 122, 153, 5

L.Ed. 414 (evidence concerning a habit of never recording without a document of transfer admitted); Chitwood v. United States, 8 Cir., 1907, 153 F. 551, 552 (evidence of habitual arrival of torn mail packages in prosecution for opening mail admitted); Union Pacific R. Co. v. Owens, 9 Cir., 1944, 142 F.2d 145, 146 (evidence as to custom in complying with company's rule for ringing bell held admissible).

N.E. 9, 44 L.R.A.,N.S., 1185 (evidence of general usage and practice on tugboats held admissible); Thallhimer v. Brinckerhoff, 1826, 6 Cow., N.Y., 90, 101 (evidence of clerk's invariable custom to mail letters as soon as copied admitted to show that letter was sent). It should be noted that the evidence involved here was not admitted to show that the defendant had been negligent in general or that it had been negligent because it had not followed a custom generally in use in the particular industry. It was offered and received for the purpose of proving a particular fact, namely, that the condition of the path between tracks 9 and 10 was defective. Cf. Eaton v. Bass, 6 Cir., 1954, 214 F.2d 896.

### 2. Evidence of the Presence of Coal in the Yard in April, 1949.

Several employees of the defendant testified that they had seen coal lying on the ground in various parts of the yard where the injury occurred during the month when the injury occurred. Evidence of general conditions throughout the yard certainly shed some light on the particular condition of the path at the place of the accident. I think that this evidence was clearly relevant. See Popper v. City of New York, 1953, 281 App. Div. 98, 117 N.Y.S.2d 335; Nichols v. Bush & Denslow Mfg. Co., 1889, 53 Hun 137, 6 N.Y.S. 601, affirmed per curiam 117 N.Y. 646, 22 N.E. 1131.

### 3. Evidence of Complaints to Safety Committee.

■ One employee of the defendant was permitted to testify that in 1947 or 1948 complaints of litter in the yard had been made to a safety committee of the defendant, of which he was a member. I agree with Judge Frank that this evidence was admissible as tending to show that the defendant had notice of the path between tracks 9 and 10. Moreover, I think the evidence was admissible under New York rules of evidence. See Pettengill v. City of Yonkers, 1889, 116 N.Y. 558, 22 N.E. 1095, where evidence of defects existing near the place where the injury occurred was held admissible.

And New York apparently admits evidence of similar accidents or occurrences where the circumstances are shown to be similar, Vogel v. Montgomery Ward, 1949, 275 App.Div. 727, 86 N.Y.S.2d 817, leave for appeal denied 299 N.Y. 800, 87 N.E.2d 690; or where such evidence tends to show notice, Sandler v. Hemlock Estates, 1951, 201 Misc. 429, 106 N.Y.S. 2d 315; Binder v. Zelda Const. Corp., Sup.1944, 51 N.Y.S.2d 660.

### 4. Evidence of Transfer of Maintenance Workers.

■ Several of the defendant's employees were permitted to testify that several months prior to April, 1949, a substantial portion of the men available in the yard for cleanup operations had been transferred to do work in other places. One witness testified that, consequently, no cleanup work was performed during a period immediately prior to the injury. Judge FRANK would admit this evidence as showing a habit of negligence on the part of the defendant. He rests this conclusion not on precedent, but on the enlightened view of Wigmore, McCormick, and the draftsmen of the Model Code of Evidence and the Uniform Rules of Evidence. Moreover, he intimates, I think erroneously, that we may formulate different and more liberal rules of evidence in F.E.L.A. cases than are applicable in other cases brought in federal courts. I think such a development would be unfortunate. Rules of evidence applicable in federal courts should not be compartmentalized according to the subject matter of the case involved. And the F.E.L.A. is a substantive statute and does not contain or imply rules of evidence. See Atlantic Coast Line R. Co. v. Dixon, 5 Cir., 1953, 207 F.2d 899, 903.

I do not think that this evidence relating to the transfer of railroad employees from the yard where the injury took place can be characterized as "habit" evidence. There was no testimony that this transfer of workers had been a regular routine. In order to be characterized as a "habit" or "custom" an act must have

been repeated on a sufficient number of occasions so as to have become habitual, i. e., a regular response to a given situation. See the Model Code of Evidence (A. L. I., 1942) Rule 307, and the Uniform Rules of Evidence (1953) Rule 50.

I would prefer to rest our affirmance of the admission of this evidence concerning the transfer of employees upon the more general ground of its logical relevance. It tended to round out the picture presented by the evidence discussed in point (3), supra, by showing that coal observed in the yard had no opportunity of being removed. Thus, it increased the plausibility of the plaintiff's version of the injury—that he stumbled over a large piece of coal lying on the path between tracks 9 and 10. As such, I concur with Judge Frank that the trial judge did not abuse his discretion in admitting it.